In re EARLY & DANIEL INDUSTRIES, INC., a/k/a Acme–Evans Company, Debtor.

Bankruptcy No. IP86–528RA V.

United States Bankruptcy Court, S.D. Indiana, Indianapolis Division.

June 12, 1989.

David R. Hamer, Dann Pecar Newman Talesnick & Kleiman, P.C. Indianapolis, Ind., for movant Creditors Committee.

David A. Golin, Winston & Strawn, Chicago, Ill., for NACC.

---

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT AND SUSTAINING IN PART AND OVERRULING IN PART OBJECTION OF UNSECURED CREDITORS' COMMITTEE TO CLAIM OF NORTH AMERICAN CAR CORPORATION

RICHARD W. VANDIVIER,
Bankruptcy Judge.

This matter comes before the Court on the objection to claim ("the Objection") filed by the Official Unsecured Creditors' Committee ("the Committee") on August 5, 1988, by which the Committee objected to Claim No. 51, filed on November 14, 1986, by North American Car Corporation ("NACC"), and on the Motion for Summary Judgment filed by the Committee on March 7, 1989. A hearing was held on April 11, 1989. The Court now grants in part and denies in part the Motion for Summary Judgment and sustains in part and overrules in part the Objection on the following Findings of Fact and Conclusions of Law.

*Findings of Fact*

1. The parties agree that the legal issue before the Court is whether NACC's claim against the Debtor is contingent for purposes of 11 U.S.C. section 502(e)(1)(B), and that the facts material to this issue are not in dispute. *See* Committee's Motion for Summary Judgment and NACC's memorandum in opposition filed April 7, 1989.

2. NACC, the Debtor, LaSalle National Bank ("LaSalle") and several other entities were parties to a transaction in 1980 involving the sale, lease and sublease of certain railcars ("the equipment"). A description of this transaction found in paragraph 2 of Gail A. Klewin's affidavit (Exhibit A to the Committee's Motion for Summary Judgment) is adopted by the Court by reference. As a result of this transaction, the Debtor became indebted to LaSalle under a lease of the equipment and related documents (collectively "the Lease"), the Debtor's obligation to LaSalle was secured by the equipment, NACC executed a guaranty ("the Guaranty") by which it guaranteed the Debtor's payment and performance under the Lease, and the Debtor agreed to indemnify and hold NACC harmless from any loss or damage resulting from default under the Lease.

3. In 1985, the Debtor defaulted on its Lease payments to LaSalle. The Debtor filed for relief in bankruptcy on January 29, 1986. LaSalle filed a claim against the Debtor on November 13, 1986, in the amount of $11,153,752.80 ("LaSalle's Claim against the Debtor"). On November 12, 1986, NACC filed its proof of claim against the Debtor in in an amount in excess of $20 million ("NACC's claim against the Debtor"), which includes claims for all costs of enforcement of the Lease and of releasing, selling, obtaining possession of, gathering, storing and relocating the equipment, and for all sums paid by NACC pursuant to the Guaranty. NACC's proof of claim appears to consist of two types of claims—a claim for indemnity for any amounts NACC will pay LaSalle under the Guaranty ("NACC's indemnity claim") and a claim for NACC's own separate costs that resulted from the Debtor's default under the Lease ("NACC's

claim for costs"). No specific dollar amount was given to NACC's claim for costs.

4. NACC filed for relief in bankruptcy on December 5, 1984, in the United States Bankruptcy Court for the Central District of California, Case No. LA 84–23401BR. On June 4, 1985, LaSalle filed a proof of claim in NACC's bankruptcy in excess of $18 million based on NACC's Guaranty of the Debtor's obligations under the Lease ("LaSalle's claim against NACC"). The Vice President of NACC states that NACC will not object to LaSalle's claim except as to the amount and estimates that NACC's general unsecured creditors will receive a dividend of between 15% and 31%. *See* affidavit of Jerome P. Pratt, Exhibit A to NACC's memorandum in opposition to motion for summary judgment. To date, NACC has paid nothing to LaSalle pursuant to the Guaranty.

5. The difference in the amounts of the various claims is apparently due in part to whether amounts realized from the sale of the equipment is credited against the claim. The Court need not resolve these variations at this time.

### Conclusions of Law

1. This Court has jurisdiction over this matter. 28 U.S.C. section 157(b)(2)(B).

2. The provision at issue, 11 U.S.C. section 502(e), reads in relevant part:

(1) Notwithstanding subsections (a), (b), and (c) of this section and paragraph (2) of this subsection, the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on ... the claim of a creditor, to the extent that—

. . . .

(B) such claim for reimbursement or contribution *is contingent* as of the time of allowance or disallowance of such claim for reimbursement or contribution. . . .

. . . .

(2) A claim for reimbursement or contribution of such an entity *that becomes fixed* after the commencement of the case shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) of this section, the same as if such claim had become fixed before the date of the filing of the petition.

(emphasis added).

3. NACC states that it will definitely pay a dividend to LaSalle in its own bankruptcy, in an amount yet to be determined. NACC argues that its indemnity claim against the Debtor is therefore not *contingent* within the meaning of section 502(e), but merely *unliquidated*, and should be allowed. The Court will consider NACC's indemnity claim first and then separately consider NACC's claim for costs.

4. The legislative history of section 502(e) includes the following:

Subsection (e), also derived from present law, requires disallowance of the claim for reimbursement or contribution of a codebtor, surety or guarantor of an obligation of the debtor, *unless the claim of the creditor on such obligation has been paid in full.* The provision prevents competition between a creditor and his guarantor for the limited proceeds in the estate.

H.R.Rep No. 95–595, 95th Cong, 1st Sess 354 (1977); S.Rep. No. 95–989, 95th Cong, 2d Sess 65 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5851, 6310; *reprinted in Norton Bankruptcy Law and Practice,* 1988–1989 Edition (hereinafter *"Norton"*) at 288 (emphasis added). (Note: As originally proposed, this subsection would have disallowed this type of claim "until such creditor's claim is paid in full." *See* H.R. 8200 and S. 2266, section 502(e). This requirement was subsequently deleted before passage. *See Norton* at 289.)

Section 502(e)(1)(B) ... disallows any claim for reimbursement or contribution by a surety to the extent such claim *is contingent* as of the time of allowance. Section 502(e)(2) is clear that to the extent a claim for reimbursement or contribution *becomes fixed* after the commencement of the case that it is to be considered a prepetition claim for pur-

poses of allowance. The combined effect of section 502(e)(1)(B) and 502(e)(2) is that a surety or codebtor is generally permitted a claim for reimbursement or contribution *to the extent the surety or codebtor has paid the assured party at the time of allowance....*
124 Cong Rec H11094 (daily ed. Sept. 28, 1978); S17410–11 (daily ed. Oct. 6, 1978); remarks of Rep. Edwards and Sen. DeConcini (hereinafter "Remarks"); *reprinted in Norton* at 288.

5. The language of section 502(e) itself and its legislative history contrasts a "contingent" claim with one that has become "fixed", and the legislative history clearly contemplates that a contingent claim will become fixed, and thus allowable, when, and to the extent, the surety or codebtor pays the underlying claim. "A claim of a surety is contingent, in this context, until the surety pays the principal creditor and thereby fixes his own right to payment from the debtor." 3 Collier on Bankruptcy, para. 502.05[1] (15th ed.).

6. The legislative history shows that the purpose of section 502(e) is to prevent competition between a creditor, such as LaSalle, and a guarantor, such as NACC, for limited proceeds of the estate. Disallowing NACC's indemnity claim against the Debtor, except to the extent it reduces LaSalle's claim against the Debtor by actually paying it, would effectuate this purpose.

7. Section 502(e) is related to another provision of the Bankruptcy Code, section 509, which provides:

(a) Except as provided in subsection (b) or (c) or this section, an entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, and *that pays such claim,* is subrogated to the rights of such creditor *to the extent of such payment.*

....

(c) The Court shall subordinate to the claim of a creditor and for the benefit of such creditor an allowed claim, by way of subrogation under this section, or for reimbursement *or* contribution of an entity that is liable with the debtor on ... such creditor's claim, until such credi-

tor's claim is paid in full, either through payments under this title or otherwise. (emphasis added).

8. The surety or codebtor must elect whether to proceed under 502(e) or 509. *See* Section 502(e)(1)(C); section 509(b)(1)(A). The legislative history comments on the relationship between these sections:

Thus, the surety or codebtor has a choice; to the extent a claim for reimbursement or contribution would be advantageous, ... a surety or codebtor may opt for reimbursement or contribution under section 502(e). On the other hand, to the extent that the claim for such surety or codebtor by way of subrogation is more advantageous, ... the surety or codebtor may elect subrogation under section 509.

The section changes current law *by making the election identical in all other respects.* To the extent a creditor's claim *is satisfied by a surety or codebtor,* other creditors should not benefit by the surety's inability to file a claim against the estate merely because such surety or codebtor has failed to pay such creditor's claim in full....

... [I]t is desirable to preserve present law to the extent that a surety or codebtor is not permitted to compete with the creditor he has assured until the assured party's claim has paid [sic] in full. Accordingly, section 509(c) of the House amendment subordinates both a claim by way of subrogation or claim for reimbursement or contribution of a surety or codebtor to the claim of the assured party until the assured party's claim is paid in full.

Remarks; *reprinted in Norton* at 289.

9. Under prior law, sureties that had paid the principle creditor in full could file a claim in their own name, but sureties who had not paid in full were limited to filing a proof of claim in the name of the assured creditor (unless the creditor was unknown), were subrogated to extent paid, and could share in dividends only after the assured creditor was paid in full. *See* former 11 U.S.C. section 57i; former Bankruptcy

Rule 304; 3 Collier on Bankruptcy para. 502.05 (15th ed.); 3 Collier on Bankruptcy para. 57.21 (14th ed.). The Bankruptcy Code. changed prior law to the extent it allowed a surety to file a claim for reimbursement in its own name even if it had not paid the assured creditor in full, but the legislative history shows that prior law was preserved in most other respects. Thus, the surety is now allowed to choose between a claim for reimbursement and a claim of subrogation, but the amount of the claim allowed against the estate must be the same under either choice. Because a claim of subrogation would be allowed only to the extent NACC paid LaSalle's claim against the Debtor, NACC's claim for reimbursement can be allowed only to the extent of such payment. Because NACC has paid nothing on LaSalle's claim against the Debtor, the Court can allow NACC's indemnity claim neither as a claim for reimbursement nor as a claim of subrogation.

10. Case law interpreting section 502(e), while sparse and factually distinguishable from this case, supports this Court's interpretation that a claim for reimbursement or contribution under 502(e) is contingent, and not allowable, except to the extent that the surety or codebtor has actually paid the underlying claim. "The codebtor gains entitlement to assert reimbursement and contribution claims only to the extent the codebtor makes these claims certain, that is, removes the third party from the debt relationship by compensating that party." *In re Charter Company*, 81 B.R. 644, 648 (D.M.D.Fla.1987), *aff'd*, 862 F.2d 1500 (11th Cir.1989). "[I]f a codebtor has not paid the creditor and established his right to payment from the debtor as of the date of the ruling on the objection, his claim is contingent and must be disallowed under section 502(e)(1)(B)." *In re Baldwin–United Corp.*, 55 B.R. 885, 895 (Bankr.S.D.Ohio 1985). While the liability of the codebtor had yet to be established in those cases, introducing a contingency beyond nonpayment not found in the case before the Court, NACC has been unable to direct the Court to a case on point in its support. NACC's relies on one court's definition of contingent claim as one "which has not yet accrued and which is dependent on some future event that may never happen". *In re Provincetown–Boston Airlines, Inc.*, 72 B.R. 307, 310 (Bankr.M.D.Fla.1987). But in that case also, the liability of the codebtor had yet to be established, and the court gave only cursory treatment to the issue of the contingent nature of the liability. The case factually closest to this case is *In re Banner Iron Works*, 69 B.R. 548 (Bankr.E.D.Mo.1987), in which a surety filed several indemnity claims against the debtor. The court allowed one claim, finding it was not contingent, at least in the amount that the surety had actually paid the assured creditor, *Id.* at 550, but disallowed the other claims on several grounds, including that the "claim for reimbursement ... [is] contingent as [the surety] has paid no claims to any creditors to whom it is mutually liable with [the debtor]...." *Id.* at 552.

11. The wisdom of disallowing reimbursement claims by guarantors except to the extent of actual payment to the assured creditor is evident when the practical problems of allowing such a claim are examined. NACC suggests that the Court allow and then estimate its claim under section 502(c). However, the amount of NACC's indemnity claim will depend on the amount NACC pays on LaSalle's claim against NACC, which will depend on the amount LaSalle receives on its claim against the Debtor, which will depend on the total amount of claims allowed against the Debtor, which will depend on the amount of NACC's claim allowed against the Debtor. The higher mathematics required for such multiple and circular calculations are beyond the expected expertise of a bankruptcy court.

12. The wisdom of disallowing reimbursement claims by guarantors except to the extent of actual payment to the assured creditor is also evident when the futility of allowing such a claim is considered. If NACC's indemnity claim is allowed, it will be subordinated to LaSalle's claim against the Debtor until LaSalle's claim is paid in full. 11 U.S.C. section 509(c). If that occurs before NACC pays anything to LaSalle under the Guaranty, LaSalle will no

**968**

longer need to pursue a guaranty claim against NACC, and NACC's indemnity claim against the Debtor will be zero. In fact, if the Court were to allow and estimate NACC's indemnity claim, the Court might be compelled to estimate it as zero because of the required subordination.

13. NACC's indemnity claim must be disallowed under 11 U.S.C. section 502(e)(1)(B) because the claim is, at this time, contingent in that NACC has not yet paid anything to LaSalle under the Guaranty.

14. NACC's claim for costs is a different matter, however, to the extent such claim may be for NACC's own separate prepetition costs resulting from the Debtor's default under the Lease, apart from any claim for reimbursement of LaSalle's costs owing under the Guaranty (which would be included in NACC's disallowed indemnity claim). Because NACC is not liable with the Debtor to LaSalle for such costs, NACC's claim for such costs is not a "claim for reimbursement or contribution of an entity that is liable with the debtor on ... the claim of a creditor ..." and thus 11 U.S.C. section 502(e) is inapplicable. Because the Committee objects to NACC's claim only on that ground, the Court finds NACC's claim for such costs would be allowable under 11 U.S.C. section 502(b).

15. Because NACC's proof of claim does not break out its allowable claim, if any, for its own costs from its disallowed indemnity claim, the Court will allow NACC 20 days from the date of judgment on this order to amend its proof of claim to state the amount of its allowable claim, if any. If NACC fails to timely amend its proof of claim, its entire claim will be disallowed. If NACC does timely amend its proof of claim, the Court will allow 20 days from the date such amendment is filed for filing objections to the amount of costs claimed.

The Court therefore GRANTS IN PART AND DENIES IN PART the Committee's Motion for Summary Judgment and SUSTAINS IN PART AND OVERRULES IN PART the Committee's objection to

NACC's claim. Judgment on this order will be entered separately.