In re **DREXEL BURNHAM LAMBERT GROUP INC., et al., Debtor.**

**Bankruptcy No. 90 B 10421.**

United States Bankruptcy Court, S.D. New York.

Oct. 13, 1992.

P. Gruenberger, Weil, Gotshal & Manges, New York City, for Drexel Burnham Lambert Group, Inc., et al. (Drexel).

A. Tramont, Jorden, Schulte & Burchette, Miami, Fla., for American Bankers Ins. Co. of Florida, American Bankers Financial Services, Inc. and American Bankers Ins. Group, Inc. (American Bankers).

S. Santoro, Christy & Viener, New York City, for Prudential Securities, Inc. (Prudential).

MEMORANDUM OF DECISION ON THE APPLICATION OF § 502(e)(1)(b) TO THE PARTIAL SETTLEMENT OF AN UNDERLYING THIRD PARTY ACTION

FRANCIS G. CONRAD, Bankruptcy Judge.

The issue presented to us [1] is whether a joint tortfeasor eliminates the contingent nature of its claim for common law contribution under Bankruptcy Code (Code) § 502(e)(1)(B) when it settles the underlying third party dispute without the participation of the other alleged tortfeasor, a debtor in bankruptcy.

We hold that without either a determination on the issue of relative fault, in jurisdictions which recognize the proportionate theory of co-liability; or a determination based on a fairness hearing, in jurisdictions applying the *pro tanto* theory, the contingency is not eliminated.

### AMERICAN BANKERS' CLAIMS

Drexel acted as placement agent in connection with certain bonds sold by the Conner Companies (Conner). In this capacity, Drexel drafted the placement memorandum given to potential bondholders to induce them to purchase these bonds. The bonds were collateralized by mobile homes insured by American Bankers.

Subsequent to the filing of bankruptcy by Conner in 1987, bondholders sued American Bankers and Drexel for, *inter alia,* securities fraud, including Rule 10b–5 violations for which contribution is available among joint tortfeasors. These actions were pending in the United States District Court in the Eastern District of North Carolina against American Bankers' claimants.

American Bankers filed proofs of claim against Drexel in connection with these actions. American Bankers contends that its proofs of claim are for contribution from Drexel which is commensurate with Drexel's proportionate share of the total liability to the plaintiffs that have sued American Bankers. Thus, they seek recovery from Drexel under common law theories of contribution among joint tortfeasors.

Drexel objects to the proofs of claim filed by American Bankers alleging that the claims should be disallowed under Code § 502(e)(1)(B) as contingent claims for contribution of an entity that is co-liable with the debtor.

American Bankers entered into a final settlement with the plaintiffs in two of these actions. As to the actions that are pending with no settlement, American Bankers acknowledges that its claims against Drexel are subject to disallowance under Code § 502(e)(1)(B) as contingent contribution claims. American Bankers, however, argues that because it has made payments to the creditors as a result of final settlements in two of the actions, its claim as to those two actions is fixed and its claim for contribution must be allowed under Code § 502(e)(2), which provides that where a reimbursement or contribution claim becomes fixed after commencement of the case, it is allowed and treated as a pre-petition claim.

### DISCUSSION

■ Disallowance of a claim under Code § 502(e)(1)(B) [2] requires that three factors be established. 1.) The claim must be one for reimbursement or contribution. 2.) The

---

1. Our subject matter jurisdiction over this controversy arises under 28 U.S.C. § 1334(b) and the Order, dated February 19, 1991 (Pollack, S.D.J.), which withdrew the reference to this Court under 28 U.S.C. § 157(d) and 11 U.S.C. § 105(a), and simultaneously re-referred to us jurisdiction over all core and non-core related matters. This is a core matter under 28 U.S.C. §§ 157(b)(2)(A) and (B). This Memorandum of Decision constitutes findings of fact and conclusions of law under F.R.Civ.P. 52, as made applicable by F.R.Bkrtcy.P. 7052.

2. 11 U.S.C. § 502(e)(1)(B) provides (in relevant part):

 [T]he court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on, or has secured, the claim of a creditor, to the extent that—

 . . . . .

 (B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution.

party asserting entitlement to reimbursement or contribution must be "liable with the debtor" on the underlying claim. 3.) The claim must be contingent at the time of its allowance or disallowance. *In re Provincetown–Boston Airlines, Inc.,* 72 B.R. 307, 309 (Bkrtcy.M.D.Fla.1987).

The claim asserted by American Bankers is based on common law theories of contribution among joint tortfeasors. As was found in *In re Baldwin–United Corp.,* 55 B.R. 885, 890–891 (Bkrtcy. S.D.Ohio 1985), where the claimants sought to recover on the same principle, this theory of recovery satisfies both the requirement that the claim be for contribution and that the claimant be co-liable with the debtor on the underlying claim. "By its nature a claim for contribution presupposes a sharing of liability and thus a codebtor relationship." *Baldwin–United, supra,* 55 B.R. at 891.

As noted, American Bankers concedes that its contribution claims based on underlying actions involving direct claimants of Drexel, in which there has been no settlement, are unliquidated claims for potential liability and thus, are disallowed under § 502(e)(1)(B). American Bankers, however, urges that the settlement of two of the suits eliminated the contingency in those two actions and fixed the amount of American Bankers' claim.

Drexel contends that the settlement payment has not eliminated the contingency; that Drexel had no involvement in the settlement and, should not be bound by it. It is Drexel's contention that there is no basis upon which to allocate liability because there has been no judicial determination of the degree of Drexel's liability.

In support of their position that the claims became fixed by virtue of the settlement payment, American Bankers cites several cases in which courts found a claimant entitled to assert contribution claims to the extent it had made payments including *In re Early & Daniel Industries, Inc.,* 104 B.R. 963, 967 (Bkrtcy.S.D.Ind.

1989) and *In re Banner Iron Works,* 69 B.R. 548, 550 (Bkrtcy.E.D.Mo.1987). These cases, however, related to guarantors who had by their payment, absolutely fixed the amount due them. No further proceeding or determination was needed to establish the amount due. Indeed, the *Early* court recognized that where the liability of the co-debtor had yet to be established, another contingency was introduced beyond that of nonpayment. *Early, supra,* 104 B.R. at 967.

Nor may American Bankers rely on *In re Porter,* 50 B.R. 510 (Bkrtcy.E.D.Va.1985), that held § 502(e)(1)(B) inapplicable to a claim based on a particular settlement. Prior to filing for bankruptcy, the debtor in *Porter* entered into guaranty and indemnity agreements with six co-sureties to indemnify a title insurance company for any loss sustained by the title insurance company in the event of its defense of any mechanic's lien suits on a parcel of property. When the title insurance company was forced to defend a mechanic's lien suit, it made demand on the sureties under the indemnity agreements. One co-surety paid a portion of the claim. Another co-surety paid an additional portion of the claim to the title insurance company and obtained a release for all six sureties. The co-surety who obtained the release sought contribution from the debtor for his pro rata share of the common obligation. The court found that § 502(e)(1)(B) did not apply because under the applicable state law "a claim to contribution arises and becomes complete and enforceable upon the payment or discharge of the common obligation by one or more of several co-sureties in excess of their ratable portion of the claim." *Id.* at 516. The settlement in the *Porter* case involved a straight guarantee. There was no issue as to liability because the parties were liable under the terms of the contract. "Contractual liability nullifies the need for judicial determination of such liability." *In re Pacor, Inc.,* 110 B.R. 686, 689 (E.D.Pa. 1990).[3]

---

**3.** Although the *Porter* court required an estimation hearing, it was not to determine whether the parties were liable. Their liability was es-

tablished by the contract and undisputed facts. The estimation hearing was required because the court elected to maintain the action for

In the case before us, Drexel's liability is precisely the contingency yet to be determined before the amount it should contribute to American Bankers may be assessed. American Bankers settled and now seeks contribution from Drexel as a joint tortfeasor. Drexel did not provide American Bankers with a straight guarantee or a hold harmless agreement that obligated Drexel to automatically pay when American Bankers paid.

■ Claims for reimbursement or contribution are allowed as pre-petition claims under § 502(e)(2) to the extent that the claims become fixed by payment. *In re Pettibone Corp.*, 110 B.R. 837 (Bkrtcy. N.D.Ill.1990). The payment alone, however, has not fixed American Bankers' claim. Indeed American Bankers recognized that the settlement payment only sets the maximum amount Drexel could owe it. This leaves open the possibility that Drexel could be liable to contribute less than this amount. Therefore the exact amount due is not "fixed" and the claim remains contingent. Indeed, in each of the contingent claims for indemnification or reimbursement on which Drexel is co-liable with the claimant for the underlying dispute, the fact that the maximum amount for which Drexel could be liable is the amount sought by the plaintiff in the underlying suit does not fix the amount or eliminate the contingency.[4]

■ It is equally unavailing for American Bankers to argue that, by entering into the settlement with the plaintiff, they have eliminated the applicability of § 502(e)(1)(B) because, by settling with that party, they are no longer liable to that party and there-

fore may not be considered co-liable with the debtor to that party. This argument does not recognize the basis for determining co-liability. The co-liability factor is determined by reference to the underlying third party action. If the "causes of action in the underlying lawsuit assert claims upon which, if proven, the debtor could be liable but for the automatic stay", then the co-liability factor is present. *In re Wedtech Corp.*, 85 B.R. 285, 290 (Bkrtcy. S.D.N.Y.1988). In the same manner, if the underlying third party action asserts claims which, if proven, would render a defendant liable to the plaintiff, then the defendant meets the co-liability requirement of § 502(e)(1)(B). In the instant action, the third party action asserted claims which, if proven, would have rendered American Bankers liable to the plaintiffs in those underlying actions. Thus, American Bankers is considered co-liable with Drexel for the purpose of determining whether § 502(e)(1)(B) applies.

The proof of claim filed against Drexel is based on joint tortfeasor contribution principles. Although American Bankers settled with the plaintiff in the underlying action, a hearing is nevertheless required to determine what Drexel's liability is to that plaintiff. Therefore the contingency is not eliminated until a determination based on that hearing. Thus, at the time of allowance or disallowance of the claim under § 502(e)(1)(B), determined by courts to be the date of the ruling on the allowance or disallowance, *Baldwin–United, supra*, 55 B.R. at 895, the contingency is present and the claim is disallowed.

---

contribution in equity which required the court to eliminate insolvent obligors from the calculations in determining the share owed by each co-surety on the common obligation. Although the non-participating surety remained liable, based on the agreement, he was unable to contribute because of his insolvency. Thus, equity mandated that the deficiency be made up by the other co-sureties rather than by the entity who was the beneficiary of the indemnification agreement. As facts relevant to the solvency of co-sureties were not before the court, the court was required to estimate the amount due by each co-surety by utilizing nonconclusive evi-

dence to determine whether the co-sureties were solvent.

**4.** Nor may American Bankers rely on the statements made in *Baldwin* and *In re Charter Co.*, 862 F.2d 1500 (11th Cir.1989), that imply that an entity would have an allowable claim for contribution under § 502(e)(1)(B) if they paid under an "individual settlement", *Baldwin, supra*, 55 B.R. at 895, or "negotiated settlement". *Charter*, supra, 862 F.2d at 1504. In both cases, the claims under review were disallowed and the courts' statements regarding settlement payments were gratuitous and unexplored.

Inasmuch as there are numerous contingent claims based upon settlement and contribution, we now set forth our basis for holding that joint tortfeasor contribution claims for partial settlement remain contingent and require a hearing before becoming fixed.

American Bankers asserts that it is making a contribution claim against Drexel because it has paid more than its fair share in the settlement. Yet, there is no determination that this is the case. There is only American Bankers' statement to that effect.

It is required that we evaluate the effect of a partial settlement in an underlying suit on the contingent nature of a claim for contribution by the settling defendant against the nonsettling party. In this analysis, we are guided by cases dealing with partial settlements and the settling parties' effort to obtain a "bar order" discharging the settling defendant of any further obligation and precluding nonsettling defendants from asserting claims for contribution from settling defendants. Our reliance on these cases is warranted in that the courts deciding these cases were required to consider the fairness of terms of the settlement to an entity who was not a party to the settlement but nevertheless was affected by it. *Masters Mates & Pilots Pension Plan and IRAP Litigation,* 957 F.2d 1020 (2d Cir.1992).[5] American Bankers' settlement with the plaintiff in the Conner litigation affects Drexel, who was not a party to the settlement, but against whom American Bankers is asserting a claim for contribution.

American Bankers' claims asserted against Drexel are under federal securities laws and state (North Carolina) statutory and common law. A federal statutory right to contribution among joint tortfeasors in security actions is set forth in Title 15 U.S.C. § 77k(f). *Franklin v. Kaypro Corp.,* 884 F.2d 1222, 1226 (9th Cir.1989). Federal courts have determined that because Congress has not established laws governing this contribution, federal courts "are free to fashion a common law." *Kaypro, supra,* 884 F.2d at 1228 n. 10; *Singer v. Olympia Brewing Co.,* 878 F.2d 596, 599 (2d Cir.1989).

The circuits are split, however, on the basis upon which to allocate contribution in connection with partial settlements. Some jurisdictions use the proportionate fault method, others the one-satisfaction rule.

The Ninth Circuit holds that contribution should be based on the proportionate fault of the tortfeasors. *Kaypro, supra,* 884 F.2d at 1226 (9th Cir.1989). Where there has been a partial settlement, at any subsequent trial to establish the nonsettling party's liability, the relative culpability of the settling and nonsettling parties is assessed and the nonsettling party is required to pay the apportioned percentage of the judgment. *Masters Mates, supra,* 957 F.2d at 1029. "[A]n exact apportionment of liability needs to occur at some point." *Dalton v. Alston & Bird,* 741 F.Supp. 157, 160 (S.D.Ill.1990). The party seeking a bar order which affects the nonsettling parties' ability to obtain any contribution is not affecting the nonsettling parties' liability. The concept of relative fault is fair to the nonsettling defendant because, at any trial brought by the plaintiff in the underlying suit against the nonsettling defendant, the percentage culpability of settling and nonsettling defendants is determined and the nonsettling defendants are only required to pay the amount for which they are found liable. *Kaypro, supra,* 884 F.2d at 1231.

**5.** American Bankers argues that these cases concern settlement agreements that included clauses seeking to bar cross-claims by non-settling defendants against settling defendants and are not applicable to the cases before us where it is the settling defendant who seeks contribution from the non-settling defendant. We recognize that in these cases the issue presented was the non-settling party's attempt to obtain contribution and in the case before us, the issue is the non-settling party's attempt to avoid contribution. In both instances, however, the courts concern is the effect of the settlement on the non-settling party. Further, in *Dalton v. Alston & Bird,* 741 F.Supp. 157, 160 (S.D.Ill.1990), the court not only issued an order barring claims for contribution by the non-settling defendant against the settling defendant, but, in addition, it precluded claims by the settling defendant against the non-settling defendant.

In the action before us, the underlying settlement does not set or fix Drexel's liability because there was no subsequent proceeding that established the relative fault of the parties. Therefore, if the proportionate fault method is followed, the amount of Drexel's liability is contingent until a relative fault hearing is concluded.

The Second Circuit adopted the "one-satisfaction rule" or the *pro tanto* method. *Singer, supra,* 878 F.2d at 600. This method provides that when there is a settlement with fewer than all the parties, the nonsettling party may offset that settlement amount from any judgment rendered by a court in favor of the plaintiff against it if "the settlement and judgment represent common damages." *Singer, supra,* 878 F.2d at 600. This ensures that the plaintiff does not recover more than the total loss. *Dalton, supra,* 741 F.Supp. at 160.

In an effort to avoid the possibility of collusive arrangements between a plaintiff and settling joint tortfeasors, courts have required a showing of good faith or a hearing determining the fairness of the settlement to non-settling parties before there is an approval of any bar order affecting the rights of non-settling parties. *Masters Mates, supra,* 957 F.2d at 1029. Further, courts have noted that an evidentiary fairness hearing, in which this affected third party participates, is required to protect the third party's due process rights. Id., at 1031.[6] A settlement bar which affects third party rights may not be approved unless there is "a judicial determination that the settlement has been entered into in good faith and that no one has been set apart for unfair treatment," id. In the same manner, in *pro tanto* jurisdictions, a debtor's liability to contribute to a settling joint tortfeasor may not be established until there is a hearing to determine whether

the settlement has been entered into in good faith and to determine the fairness of the settlement to the non-settling party as an affected third party. *Masters Mates* sets forth factors that must be considered at the hearing to appraise whether the settlement is fair including the relative fault of the parties, the likelihood that the plaintiff will win the underlying action and the resources of the party at greater fault. *Id.* at 1031–1032.

Drexel's liability to American Bankers depends upon the outcome of a fairness hearing that has not yet been conducted; therefore, American Banker's claim against Drexel remains contingent until the determination rendered after a fairness hearing.

A third method of contribution followed in some jurisdictions is the *pro rata* rule. "The *pro rata* rule apportions an equal share of the liability to each defendant in a lawsuit." *Masters Mates, supra,* 957 F.2d at 1028. When one party settles a lawsuit, at a subsequent trial against a non-settling party, the total damages sustained by the plaintiff is determined, and the non-settling party pays an equal share of the total damages regardless of his degree of fault. At the trial, the total liability of all of the defendants to the plaintiff in the settled action is independently determined. However remote the possibility, if the judgment at trial is less than the settlement amount, the non-settling defendant will pay less than its equal share of the settlement amount. *In re Jiffy Lube Securities Litigation,* 927 F.2d 155, 161 n. 3 (4th Cir. 1991). Where a trial has not been conducted, a contribution claim by a settling defendant against a non-settling defendant would require a hearing to determine the total liability of all defendants to the plaintiff or more importantly whether the non-settling party has any liability.[7]

6. American Bankers argues that Drexel had an opportunity to oppose American Bankers' settlement agreement with the plaintiffs in the underlying action and did not. This ignores the fact that as a debtor in bankruptcy, all actions against Drexel are stayed and Drexel is not required to participate in litigation.

7. Although we noted earlier that, in deciding whether § 502(e)(1)(B) applies, we refer to the

underlying third party action to determine if the parties satisfy the "co-liability" requirement of that section of the statute, this analysis only pertains to the threshold issue of deciding whether the Code section applies to the particular claim asserted. It is not to be construed as a final determination on the issue of any party's liability.

We hold that absent a determination based on either a relative fault hearing, a fairness hearing, or an actual trial dependent on the principles followed in the particular jurisdiction, the contingency is not eliminated.

Inasmuch as there has been neither a hearing determining Drexel's proportionate fault in the underlying action nor a hearing on the fairness of the settlement to Drexel, the amount owed by Drexel has not been fixed and the claims are still contingent and are disallowed under Code § 502(e)(1)(B).

## PRUDENTIAL'S CLAIM

 Prudential entered into a Agreement Among Underwriters with Drexel, and others, to act as co-underwriters in the public offering of securities of RAC Mortgage Investment Corp. (RAC). Several actions alleging, *inter alia,* violations of the federal securities laws, state law, and common law were commenced against Prudential and Drexel and the other underwriters related to these sales. These actions were consolidated in the United States District Court in Maryland. Later, Prudential entered into a settlement agreement with the RAC plaintiffs without Drexel's participation in the settlement. Prudential, however, did obtain a release of liability for Drexel from the plaintiffs in the RAC litigation. After a hearing under Rule 23 of the F.R.Civ.P. to determine if the settlement was fair to the "settling class", the settlement was approved by the Maryland District Court. The Settlement Agreement provides that the District Court of Maryland retains jurisdiction of the settlement agreement and that the agreement is to be governed by Maryland law. Under the settlement, Prudential deposited $10,000,000 in an account to satisfy claims in the RAC action.

The RAC settlement agreement precludes non-settling underwriters from seeking contribution from settling underwriters. The agreement, however, allows claims for contribution by settling underwriters against any non-settling underwriters and carefully delineates the procedure to be used to determine the non-settling party's liability if Prudential should seek contribution from it. The agreement provides that "if Prudential Securities secures a judgment against the Non–Settling Underwriter Defendants", then the damages recoverable from that non-settling underwriter are reduced in one of two ways based upon whether the judgment relies on a federal securities law claim or on a state claim. [Agreement of Settlement Section 4.3C] [Final Judgment and Order of Dismissal ¶ 11 12/4/91]. At the time the parties entered into the settlement, the Fourth Circuit applied the proportionate fault rule for contribution among joint tortfeasors,[8] and in accordance with that method, the agreement provides that if the contribution claim is based on a federal securities law, the damages recoverable by Prudential from a non-settling underwriter "shall be reduced based on the proportionate share of damages attributable to the Settling Defendants as the Court or jury determines to be appropriate at trial." Id. The damages recoverable by Prudential from a non-settling underwriter with respect to any judgment based on state law claims "shall be reduced on a *pro rata* basis, in accordance with the Maryland Uniform Contribution Among Tort–Feasors Act, Md.Ann.Code art. 50, ¶¶ 16–24." Id.

Prudential seeks reimbursement of the $10,000,000 payment it made under the RAC settlement asserting that this payment fixed its claim, eliminated the contingency and it is not disallowable under Code § 502(e)(1)(B).

Drexel objects asserting that the claim is disallowable as contingent because no hearing has been conducted to determine the relative culpability of the parties or the fairness of the settlement to Drexel.

For the reasons set forth in our discussion of American Bankers' claim, we agree with Drexel. To calculate the damages

---

**8.** Recently, the District Court of Maryland applied the *pro tanto* rule. *Jiffy Lube, on remand,*

772 F.Supp. 890 (D.Md.1991).

recoverable from Drexel by Prudential, the settlement provides the District Court of Maryland would apply a relative fault analysis to any judgment obtained against Drexel by Prudential. At this point there has been no hearing to determine the relative culpability of the parties. Prudential's claim against Drexel for contribution toward the damages based on violations of the federal securities laws is not fixed until the determination based on a relative fault hearing. The Maryland District Court's recent decision to apply the *pro tanto* method would still require a hearing to determine the fairness of the settlement to Drexel and the claim remains contingent absent that hearing.

The damages recoverable on the state law claims would require a judgment that assesses the total damages against all parties. Drexel would pay its *pro rata* share of that judgment. That judgment, however, has not been rendered. Thus, a fairness hearing is required to determine if Drexel has any actual liability on the claim. The amount of Prudential's claim is not fixed until the determination after the fairness hearing.

 Furthermore, the Rule 23 hearing under F.R.Civ.P. does not satisfy the hearing requirement in this context inasmuch as its "focus (is) on maximizing the return to the injured plaintiffs" *Masters Mates*, *supra*, 957 F.2d at 1025. The Rule 23 hearing is concerned with the fairness and reasonableness of the settlement to the settling class of plaintiffs, not with the fairness or reasonableness of the settlement to the non-settling party and does not fulfill the requirement of a hearing on the fairness to Drexel.

Inasmuch as there has been neither a determination based on a relative fault hearing nor based on a fairness hearing, the claim is contingent and disallowed under § 502(e)(1)(B).

Finally, we note that an overriding consideration in our analysis has been that there must be finality in a bankruptcy proceeding. This is not accomplished if we burden the bankruptcy estate "by estimated claims contingent in nature." *In re The*

*Charter Company*, 862 F.2d 1500, 1502 (11th Cir.1989). The goals of bankruptcy are to rehabilitate the debtor by according a fresh start while imparting fair treatment to the creditors by "paying ascertainable claims as quickly as possible." *Id.*

Counsel for Debtor to settle an order.