**In re GCO SERVICES, LLC and GFinancial, LLC, Debtors.**

Nos. 02–15360, 02–15361ALG.

United States Bankruptcy Court, S.D. New York.

May 5, 2005.

Arent Fox PLLC, by Heidi J. Sorvino, Lisa M. McIntyre, New York City, for the Responsible Officer.

Bond Schoeneck & King PLLC, by Richard A. Braden, Buffalo, NY, for Claimants.

## MEMORANDUM OPINION

ALLAN L. GROPPER, Bankruptcy Judge.

Before the Court is an objection filed by the Responsible Officer charged with the administration of the Debtors' post-confirmation estate to the claims filed by William O. Fields, Paul K. Mescall, Kenneth W. McCourt, and Edward P. Malik ("Claimants"). For the reasons stated below, the objection is sustained and the claims are disallowed.

### Background

Claimants are the trustees of the Buffalo Color Corporation Salaried Employees Pension Plan and the Buffalo Color Corporation Hourly Employees Pension Plan (collectively the "Pension Plan" or the "Plan"). The Pension Plan is a trust administered for the benefit of the workers of the Buffalo Color Corporation and is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1101 *et seq.* Claimants allege that the Debtor, a broker dealer, solicited them and induced them to hire it as a "consultant to direct the investment of Pension Plan assets." (Pre–Hearing Submission at 3). Claimants assert that certain of the Debtor's employees falsely represented that it had the ability to successfully manage a large and complex pension plan, that the Debtor actively mismanaged the Pension Plan, and, as a result, that the Pension Plan underperformed the market by almost $10,000,000 while the Debtor was managing it.

In April of 2002, prior to the petitions in the Chapter 11 cases, the Pension Plan itself filed suit against the Debtor, alleging that the Debtor violated its fiduciary duties, as defined in the ERISA statute, by:

a. Failing to undertake a reasonable inquiry to determine the Pension Plan's needs, preferences, and objectives;

b. Failing to review the current Plan documents, tax reporting forms, current valuation reports or statements of assets;

c. Failing to implement a statement of investment policy for the Plan that accounted for the plan's needs, preferences, and objectives;

d. Retaining investment managers to invest the Plan's assets without conducting a diligent search and evaluation;

e. Failing to diversify the Plan among various classes of investments;

f. Failing to effectively communicate the Plan's goals and objectives to the investment managers;

g. Failing to monitor the performance of the Plan's investments to ensure compliance with the statement of investment policy; and

h. Procuring financial benefit for themselves through commissions for transactions on behalf of the Plan generated by third parties.

(Pension Plan's Statement of Claim in Arbitration before the National Association of Securities Dealers.) The Pension Plan sought damages in excess of $10,000,000.

The Pension Plan also brought suit against Claimants, the Pension Plan's trustees during the period of asserted mismanagement, for alleged breach of their fi-

duciary duties, including retention of a personal friend as the Pension Plan's investment advisor without proper review of his qualifications; retention of investment managers without considering their qualifications; conflicts of interest; failure to monitor the Pension Plan's performance; and failure to remedy the deficiencies in the Plan's returns when they came to light. This action remains pending, although Claimants have indicated that a settlement in principle was reached.

On October 9, 2002, the Debtor and a subsidiary company filed under Chapter 11 of the Bankruptcy Code, which effectively stayed the Pension Plan's litigation against the Debtor; the Plan's litigation against Claimants continued. The Pension Plan subsequently filed a proof of claim seeking an allowed unsecured claim against the Debtor for the damages claimed in conjunction with the State court litigation. The Debtor initially objected to the Pension Plan's claim, but eventually settled it for an allowed unsecured claim of $750,000. Claimants also submitted proofs of claim in these bankruptcy cases.[1] They base their claims on a possible judgment against them in the Pension Plan's pending litiga-

tion, stating that "in the event a judgment is recovered against them, [they] would possess a claim against Gruntal [the Debtor's former name] based on Gruntal's breach of fiduciary duties established under ERISA § 404(a) ... and pursuant to ERISA § 405(d)(1) and/or indemnification and contribution as provided under Federal ERISA Common Law." (Ex. A to Proof of Claim.)

### Discussion

In their proofs of claim, Claimants allege three grounds for a claim against the Debtor: first, as a result of the Debtor's alleged breach of fiduciary duties pursuant to ERISA § 404(a), 29 U.S.C. § 1004(a); second an "honest fiduciary claim" under ERISA § 405(d), 29 U.S.C. § 1105(d); and third, indemnification/contribution as provided by Federal common law. For the reasons detailed below, they have no direct claims under ERISA, and their contributory claims for indemnification and contribution are barred by the Bankruptcy Code.

### I. Claimants' ERISA § 404 and § 405 Claims

Claimants base their claims against the Debtor in part on §§ 404(a)[2] and 405(d)[3]

---

**1.** Fields, McCourt and Malik each filed a $10,000,000 proof of claim, while Paul Mescall filed a $12,000,000 proof of claim.

**2.** ERISA § 404(a) states in pertinent part that:

(1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
(A) for the exclusive purpose of:
(i) providing benefits to participants and their beneficiaries; and
(ii) defraying reasonable expenses of administering the plan;
(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters

would use in the conduct of an enterprise of a like character and with like aims;
(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.
29 U.S.C. § 1104(a).

**3.** ERISA § 405(d) states:

(1) If an investment manager or managers have been appointed under section 1102(c)(3) of this title, then, notwithstanding subsections (a)(2) and (3) and subsection (b) of this section, no trustee shall be liable for the acts or omissions of such investment manager or managers, or be

of ERISA, which they assert gives them an implied direct right of recovery against a co-fiduciary for breach of the co-fiduciary's duties. For the reasons stated below, ERISA does not provide these causes of action, and claims based on these grounds must be expunged.

■ ERISA was enacted as a comprehensive remedial scheme, designed to protect pension plans and their beneficiaries. See 29 U.S.C. § 1101(b); *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 361, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980). The Supreme Court has cautioned against tampering "with an enforcement scheme crafted with such evident care as the one in ERISA." *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 147, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). In *Russell*, an ERISA plan beneficiary sued the plan's trustees for an alleged breach of fiduciary duties claiming an implied right of action under one of the sections of ERISA. Her suit was dismissed because § 502(a) of ERISA, which sets forth the civil actions that may be brought under ERISA, does not provide for such an action. The Supreme Court held that the causes of action found in § 502 persuaded it that "Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." *Russell*, 473 U.S. at 146, 105 S.Ct. 3085. Subsequent to *Russell*, the Second Circuit held that a former fiduciary does not have standing to sue a co-fiduciary for damages under § 502 of ERISA. *Chemung Canal Trust Co. v. Fairway Spring Co., Inc.*, 939 F.2d 12, 14 (2d Cir.1991).

ERISA § 502(a) authorizes the following two causes of action for a violation of the substantive provisions of ERISA:

under an obligation to invest or otherwise manage any asset of the plan which is subject to the management of such investment manager.

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title [ERISA § 409];

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violated any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations, or (ii) to enforce any provisions of this subchapter or the terms of the plan;

29 U.S.C. § 1132. A cause of action for damages is thus expressly created for violation of 29 U.S.C. § 1109, which is § 409 of ERISA. Section 502(a) does not create a cause of action for violation of § 404 or § 405(d), the two sections relied on by Claimants.

Moreover, § 409 of · ERISA—the one section of ERISA in respect of which § 502(a) authorizes a suit for damages—provides for a recovery only to a plan. Section 409 states, in pertinent part:

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable *to make good to such plan* any losses to the plan resulting from each such breach, *and to restore to such plan* any profits of such fiduciary which have been made through the use of assets of the plan by the fiduciary . . . .

29 U.S.C. § 1109 (emphasis added). The Supreme Court held in *Russell* that "the entire text of [ERISA] § 409 persuades us that Congress did not intend that section to authorize any relief except for the plan itself." *Russell*, 473 U.S. 134 at 144, 105 S.Ct. 3085, 87 L.Ed.2d 96; see also, *Rich-*

(2) Nothing in this subsection shall relieve any trustee of any liability under this part for any act of such trustee.
29 U.S.C. § 1105(d).

ards v. General Motors Corp., 991 F.2d 1227, 1231 (6th Cir.1993); Kim v. Fujikawa, 871 F.2d 1427 (9th Cir.1989).

Based on the foregoing authority, the Second Circuit has held flatly that ERISA does not provide a co-fiduciary with a statutory claim against a co-fiduciary. In Chemung Canal Trust Co. v. Fairway Spring Co., Inc., supra, 939 F.2d 12, an ERISA fiduciary who was sued for an alleged breach of its fiduciary duties to the plan asserted a claim against a co-fiduciary, who allegedly participated in the breach. The Second Circuit held, "ERISA does not explicitly provide for contribution and indemnity." Chemung Canal Trust Co., 939 F.2d at 15. The majority held, instead, that the co-fiduciary's claim could only be based on the traditional trust law right to contribution or indemnity that is preserved as part of a Federal common law of ERISA.[4]

■ Claimants also argue that ERISA § 405(d) completely insulates them from liability for the Pension Plan's losses, and thus that they are entitled to recover from the Debtor any amounts paid in settlement, as well the cost of defense. As stated above, the case law in this Circuit is uniform that ERISA does not provide a basis for a former fiduciary to sue a co-fiduciary for monetary relief. In any event, ERISA § 405(d)(1) was not intended as an absolute shield to a fiduciary's potential liability for a breach of its own duties, as Claimants argue. Section 405(d)(1) provides:

If an investment manager or managers have been appointed under section 402(c)(3) [29 USCS § 1102(c)(3)], then, notwithstanding subsections (a)(2) and (3) and subsection (b), no trustee shall be liable for the acts or omissions of such investment manager or managers, or be under an obligation to invest or otherwise manage any asset of the plan which is subject to the management of such investment manager.

29 U.S.C. § 1105(d)(1). This provision reduces the "obligations of the named fiduciaries with regard to their duty of care ...." Lowen v. Tower Asset Corp., 829 F.2d 1209, 1219 (2d Cir.1987). "Under Section 405(d)(1), once such an appointment [of an investment manager] has been made, the trustees cannot be held liable for any act or omission of that investment manager so far as the assets entrusted to the manager are concerned." Id. However, § 405(d)(2) also provides, "Nothing in this subsection shall relieve any trustee of any liability under this part [29 U.S.C. §§ 1101 et seq.] for any act of such trustee." 29 U.S.C. § 1105(d)(2). Thus, the courts have held that § 405(d)(1) does not grant co-fiduciaries immunity for their own actions or negligence. Rubin v. Valicenti Advisory Servs., Inc., 326 F.Supp.2d 427, 428 (W.D.N.Y.2004). Accordingly, Claimants do not have statutory immunity for their own breaches of fiduciary duties, and they cannot use § 405(d) to bolster their argument that they are entitled to recover damages from the Debtor by virtue of the express provisions of ERISA.[5]

---

**4.** The Seventh Circuit in an early case, Free v. Briody, 732 F.2d 1331, 1337 (7th Cir.1984), held that a co-fiduciary might have a right to contribution pursuant to § 1109. It is doubtful that decision stands after Russell. In any event, the Second Circuit has conclusively held that a co-fiduciary's right is not found in the ERISA statute, but arises through the Federal common law of ERISA and the principles of trust law. See Chemung Canal Trust Co., 939 F.2d at 15.

**5.** A dissenting judge in Chemung Canal Trust Co. was of the view that Congress's failure to provide a remedy in favor of breaching fiduciaries in § 1109 excluded any right to indemnification or contribution for an ERISA violation. The majority did not so hold, but there is certainly no suggestion in that case that § 405(d) creates an implied right of action.

## II. Claimants' Federal Common Law Claims Must Be Expunged Pursuant to § 502(e)

Claimants' only remaining claims are for indemnification or contribution pursuant to the Federal common law of ERISA. In the Second Circuit, these claims (or at least contribution claims) can be pursued under the theory of *Chemung Canal Trust Co.* However, these claims fall squarely within the scope of § 502(e) of the Bankruptcy Code.

 Section 502(e) of the Bankruptcy Code provides in pertinent part:

the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that—

. . . . .

(B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution;

11 U.S.C. § 502(e)(1)(B). Three elements must be met in order for a claim to be subject to disallowance pursuant to § 502(e)(1)(B): "First, the claim must for reimbursement or contribution. Second, the party asserting the claim must be 'liable with the debtor' on the claim. Third, the claim must be contingent at the time of its allowance or disallowance." *In re Drexel Burnham Lambert Group Inc.*, 148 B.R. 982, 985 (Bankr.S.D.N.Y.1992) (*Drexel II*), citing *In re Drexel Burnham Lambert Group, Inc.*, 146 B.R. 98, 100–101 (Bankr.S.D.N.Y.1992) (*Drexel I*); *In re Provincetown–Boston Airlines, Inc.*, 72 B.R. 307, 309 (Bankr.M.D.Fla.1987). The claims pursued by Claimants satisfy each of these tests.

### (1) The Indemnification Claims Satisfy the First Element of § 502(e)

 The first element tests whether a claim is for reimbursement or contribution.

"Whether a Claim is one for reimbursement or contribution depends on its characterization under state or federal statutory law or common law." L. King, *et al.*, *Collier on Bankruptcy*, ¶ 502.06[2][a] (15th ed. Rev.2003). Contribution "refers to the ability of one joint tortfeasor against whom a judgment is rendered to recover a proportional share of the judgment from another joint tortfeasor also liable to the plaintiff . . ." *In re Wedtech Corp.*, 85 B.R. 285, 289 (Bankr.S.D.N.Y.1988). Thus where a claimant requests that a debtor "pay its proportionate share of any future payment based on a judgment that may be made in the pending litigation with third parties, the first element for application of Code § 502(e)(1)(B) is met." *Drexel I*, 148 B.R. at 984. Because "the concept of reimbursement includes indemnity," any claims for indemnification also fall within the scope of the first prong of § 502(e)(1)(B). *Wedtech*, 85 B.R. at 289.

Claimants ask that the Debtor be required to reimburse them for any judgment against them or settlement payment in the pending litigation, together with the costs of defense. This is, quite plainly, a claim for indemnification, and as such, satisfies the first prong of § 502(e)(1)(B) of the Bankruptcy Code.

### (2) The Debtor is "Liable With" the Claimants

 The second prong of § 502(e)(1)(B) asks whether a debtor is "liable with" the claimant. This prong requires "a finding that the causes of action in the underlying lawsuit assert claims upon which, if proven, the debtor could be liable but for the automatic stay." *Wedtech*, 85 B.R. at 290. Claimants' Federal common law claims for indemnification certainly satisfy this prong of § 502(e)(1)(B).

 As stated above, ERISA does not provide a co-fiduciary with a cause of ac-

tion against a co-fiduciary; instead, that right is derived from the Federal common law. In *Chemung Canal Trust Co.*, the Second Circuit explained that the right to contribution among ERISA co-fiduciaries is "no more than a procedural device for equitably distributing responsibility for plaintiff's losses proportionally among those responsible for the losses . . . ." *Chemung Canal Trust Co.*, 939 F.2d at 15–16. Thus, a Federal common law ERISA contribution claim presupposes co-liability, and such an action is merely "an equitable means of apportioning wrongdoing in this context" and not an independent right to sue for damages. See *Chemung Canal Trust Co.*, 939 F.2d at 15–16.

Claimants argue, notwithstanding the nature of contribution and indemnification, that they have direct claims against the Debtor, and as such they cannot be "liable with" the Debtor. The short answer to this argument is no such "direct" cause of action exists. As discussed above, the ERISA statute does not provide one former ERISA fiduciary with a right to sue a co-fiduciary for damages for a breach of fiduciary duties, and the Federal common law claim presuppose co-liability. This case, then, is not similar to *Al Tech Specialty Steel Corp. v. Allegheny Int'l, Inc. (In re Allegheny Int'l, Inc.)*, 126 B.R. 919, 922–23 (W.D.Pa.1991), relied upon by Claimants. In *Allegheny Int'l*, the claimants brought suit pursuant to certain provisions of the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA) that expressly provided them with a "direct" cause of action

against the debtor. ERISA contains no such provisions.[6]

Insofar as Claimants have any right to indemnification or contribution from the Debtor, that right is dependent on co-liability with the Debtor, and therefore the second prong of § 502(e)(1)(B) has been satisfied.

### (c) The Claims are Contingent

Finally, a claim must be "contingent" in order to be disallowed pursuant to 502(e)(1)(B). A claim is contingent where it "has not yet accrued and . . . is dependent upon some future event that may never happen." *Matter of Provincetown–Boston Airlines, Inc.*, 72 B.R. at 310. In order for this element to be satisfied, such contingency must exist on the date of the Court's ruling. See *In re Baldwin–United Corp.*, 55 B.R. 885, 894–95 (Bankr. S.D.Ohio 1985).

Claimants do not contest the fact that their claims are unliquidated. (Proof of Claim at 2.) Claimants admit that their claims are contingent. (Br. in Opp'n at 8.) The Court is unaware of any change in the status of the settlement.[7] Because the claims would not mature until a future event, such claims remain contingent, and therefore satisfy the third element of § 502(e)(1)(B).

The purpose of § 502(e)(1)(B) is to prevent contingent, unresolved indemnification or contribution claims from delaying the consummation of a plan of reorganization or a final distribution in a liquidating case. See *Syntex Corp. v. Charter Co. (In*

---

**6.** The foregoing is not to say that environmental claims cannot be disallowed under § 502(e)(1)(B). In *Syntex Corp. v. Charter Co. (In re Charter Co.)*, 862 F.2d 1500 (11th Cir. 1989). the Circuit Court held that certain CERCLA claims should be disallowed under § 502(e)(1)(B) because they did not assert direct CERCLA liability, but were in the nature of claims for indemnification or contribution.

**7.** While it need not be decided on these facts, there is authority that the claims would remain contingent notwithstanding the parties' consummation of a settlement not binding on the Debtor. See *Drexel I*, 146 B.R. at 102–105.

*re Charter Co.)*, 862 F.2d at 1502. The Debtor has not pushed these claims to an early adjudication; on the contrary, these are among the last material claims to be resolved before a long-delayed final distribution can be made in these proceedings. As they remain contingent and further proceedings would doubtless further delay a distribution closing the Chapter 11 cases, they are precisely the type of claims that Congress determined should be disallowed under the provisions of § 502(e)(1)(B) of the Bankruptcy Code.

### Conclusion

Claimants' claims pursuant to ERISA §§ 404 and 405(d) are disallowed because ERISA does not provide them with a right to recovery. Their remaining claims for contribution and indemnification arising under the Federal common law of ERISA are disallowed pursuant to § 502(e)(1)(B) of the Bankruptcy Code.

IT IS SO ORDERED.