**In re WEDTECH CORP., f/k/a Welbilt Electronics Die Corp., Debtor.**

**Bankruptcy No. 87 B 12366 (HCB).**

United States Bankruptcy Court, S.D. New York.

Feb. 22, 1988.

Pollner, Mezan, Stolzberg, Berger & Glass, P.C. by John Reichman, Angel & Frankel, P.C. by John Drucker, New York City, for debtor.

Stroock & Stroock & Lavan by Daniel Golden, New York City, for Committee of Unsecured Creditors.

Howard, Rice, Nemerovski, Canady, Robertson & Falk by Alan W. Sparer, San Francisco, Cal., for W. Franklyn Chinn.

Skadden, Arps, Slate, Meagher & Flom by Carolyn S. Schwartz, New York City, for John Mariotta.

## DECISION

HOWARD C. BUSCHMAN, III, Bankruptcy Judge.

Pursuant to Rule 3007 of the Rules of Bankruptcy Procedure (1987) Debtor, Wedtech Corporation, and the Official Committee of Unsecured Creditors (the "Committee") jointly seek an order disallowing, pursuant to Bankruptcy Code Sections 502(e)(1)(B) and 502(b)(1), 11 U.S.C. §§ 502(e)(1)(B), 502(b)(1) (1986), the claims for indemnity filed by John Mariotta, founder and a former officer and director of Wedtech, and W. Franklyn Chinn, a former director of and consultant to Wedtech. In the event the individual claims are not fully disallowed, an evidentiary hearing is to be scheduled to determine their validity.

I

Prior to filing its bankruptcy petition on December 15, 1986, Wedtech Corporation, ("Debtor" or "Wedtech") operated as a military contractor and sought and was awarded Defense Department contracts through the Small Business Administration Section 8(a) program allowing qualified minority businesses to receive government contracts without competitive bidding. It issued and sold common stock pursuant to registration statements that became effective 1983 and 1986 and 13% convertible subordinated debentures and 14% senior subordinated notes pursuant to registration statements that, respectively, became effective in 1984 and 1986. Upon filing for bankruptcy, the newly appointed management determined that Wedtech had been victimized through embezzlement and fraud by its former management, consultants, and others. Indictments have been brought against several former officers and directors. Nine class action suits were commenced by shareholders, bondholders, and noteholders of Wedtech against these persons and other entities. These actions, commenced in this District, were consolidated and the consolidated class action proceeding is now pending before Judge Leonard B. Sand. *In re Wedtech Securities Litigation,* No. 86 Civ. 8628 (LBS).[1]

Mariotta and Chinn are named defendants in the consolidated class action. Chinn is also named as a defendant in three additional individual securities actions: *Asher v. Mariotta,* 87 Civ. 3205 (LBS), *Aim Advisors, Inc. v. Bear Stearns & Co.,* 87 Civ. 5762 (LBS) and *United High Income Fund v. Neuberger,* No. 87 Civ. 5839 (LBS).[2] Moreover, the debtor has brought an adversary proceeding, *Wedtech Corp. v. R. Kent London M.D., et. al.,* No. 87–5568A, naming Chinn, his company, Financial Management International Inc., R. Kent London, a former consultant to Wed-

---

1. Two additional actions commenced in other districts were transferred to this district by the Judicial Panel on Multi–District Litigation.

2. Chinn also asserts that he is named as a defendant in *Gibraltar Savings Bank v. Bear Stearns & Co.,* 87 Civ. 2835 (LBS). The complaint in that action, however, does not name Chinn as a party defendant.

tech, and London's consulting firm as defendants. That complaint seeks the return of a consulting fee of $1,140,000 paid to London and alleged to have been shared with Chinn. It also seeks return of amounts Wedtech disbursed in compensation for London's services with regard to a tug barge system and for Chinn's and London's business expenses. In addition, Chinn has been recently indicted by a grand jury in the Southern District of New York on the basis of his alleged Wedtech activities. By proof of claim filed December 2, 1987, Chinn seeks indemnification from Wedtech for all expenses (including attorneys' fees and expenses establishing a right to indemnification), judgment, fines, settlements, and other amounts actually and reasonably incurred by him in connection with the above actions and his claim.

Mariotta has been similarly indicted for activities relating to Wedtech. Moreover, three civil suits have been brought against him. In addition to being named as a defendant in the consolidated class action, Mariotta is also named as a defendant in *Asher v. Mariotta*, 87 Civ. 3205 (LBS), and an adversary proceeding commenced by Wedtech entitled *Wedtech Corp. v. Mariotta*, No. 87–5097A. Mariotta filed a proof of claim on December 1, 1987, similar to Chinn's, seeking indemnification from Wedtech for pecuniary loss he stands to suffer as a result of the lawsuits in which he was named as a defendant.

Chinn and Mariotta assert that their right to indemnification stems from Article X of Wedtech's bylaws. That article provides that

> [t]he Corporation [Wedtech] shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the Corporation) by reason of the fact that he is or was a director, officer, employee

or agent of the Corporation, ... against expenses (including attorney's fees), judgments, fines and amounts held in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding if he acted in good faith and in a manner he reasonably believed to be in ... the best interests of the Corporation, and, with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful ...

By–Laws, Article X, Section 1. In addition, Wedtech's by-laws provide that Wedtech

> shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the Corporation to procure a judgment in its favor by reason of the fact that he is or was a director, officer, employee or agent of the Corporation, against expenses (including attorneys' fees) actually and reasonably incurred by him in connection with the defense or settlement of such action or suit if he acted in good faith and in a manner he reasonably believed to be in or not opposed in [sic] the best interests of the Corporation ...

By-laws, Article X, Section 2. Furthermore,

> to the extent that a director, officer, employee or agent of the Corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in Section 1 or 2, or in defense of any claim, issue or matter therein, he shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by him in connection therewith.

By–Laws, Article X, Section 4. The indemnification provisions in Wedtech's by-laws explicitly apply to "... a person who has ceased to be a director, officer, employee or agent ..." By–Laws, Article X, Section 6.[3] A hearing on the objections to the Chinn

---

3. In his papers, Chinn also alludes that he is entitled to indemnification and/or contribution pursuant to Article 7 of the New York Bus. Corp. Law §§ 720 through 725 (McKinney's 1986 and Supp.1988). Although Wedtech's indemnification clauses are consistent with the Business Corporation Law, indemnification is not mandated by that statute and that statute does not determine the allowability of his claim.

and Mariotta claims was scheduled and heard in this Court on January 19, 1988.

## II

At the hearing, the debtor asserted that, as a matter of law, the Chinn and Mariotta claims are expressly disallowed under § 502(e)(1)(B) of the Bankruptcy Code. That section commands that

> the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on, or has secured, the claim of a creditor, to the extent that—
>
> \*   \*   \*   \*   \*   \*
>
> (B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution—

Thus, in order to come within § 502(e)(1)(B), (i) the claim must be one for reimbursement or contribution; (ii) the entity asserting the claim for reimbursement of contribution must be "liable with the debtor" on or have secured the claim of a creditor; and (iii) the claim must be contingent at the time of its allowance or disallowance. *In re Provincetown–Boston Airlines, Inc.*, 72 B.R. 307, 309 (Bankr.M.D.Fla.1987).

■ As to the first element, since Chinn's and Mariotta's claims are based on indemnification pursuant to Article X of Wedtech's bylaws, it is asserted that indemnification is not contribution, and therefore § 502(e)(1)(B) is inapplicable. Assuredly, contribution refers to the ability of one joint tortfeasor against whom a judgment is rendered to recover a proportional share of the judgment from another joint tortfeasor also liable to the plaintiff and thus differs from indemnity. *See Dole v.* *Dow Chemical Co.*, 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972). But the concept of reimbursement includes indemnity. In essence, Chinn and Mariotta are seeking to be reimbursed for pecuniary loss arising from lawsuits in which they are named as defendants. That they seek to do so by virtue of indemnification does not contradict the reimbursement nature of their claims. Accordingly, the first element listed above is satisfied.

The third element of § 502(e)(1)(B) is also satisfied. As of yet, the underlying liability of Chinn and Mariotta or Wedtech is undetermined. Thus, the claims of Chinn and Mariotta are contingent as of the date of this decision. *In re Provincetown–Boston Airlines, Inc.*, 72 B.R. at 310; *In re Baldwin–United Corp.*, 55 B.R. 885, 895 (Bankr.S.D.Ohio 1985).

■ Whether the movants satisfy the co-liability element of § 502(e)(1)(B) of the Code is somewhat more thorny. Contrary to claimants' argument that the co-liability of debtor and claimant requirement of § 502(e)(1)(B) permits that section to apply only where the underlying plaintiff has filed a claim in the bankruptcy case and that claim has been allowed, the statutory language of § 502(e)(1)(B) contains no such requirement. In enacting the provision, Congress merely provided for disallowance of contingent claims for reimbursement filed by persons liable with the debtor. To be sure, the legislative history concerning § 502(e) indicates that a principal purpose of the entire subsection is to prevent a double payment by the estate,[4] and there can be no such double payment if the plaintiff fails to file a claim. But the language of § 502(e)(1)(B) is, unlike § 502(e)(1)(A), not so limited.[5] That § 502(e)(1)(A), in

---

4. "Subsection (e) ... requires disallowance of the claim for reimbursement or contribution of a co-debtor, surety or guarantor of an obligation of the debtor, unless the claim of the creditor on such obligation has been paid in full. The provision prevents competition between a creditor and his guarantor for the limited proceeds in the estate." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 354 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 65 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5851, 6310.

5. Section 502(e)(1)(A) provides:

Notwithstanding subsections (a), (b), and (c) of this section and paragraph (2) of this subsection, the court shall disallow any claim for reimbursement or contribution of any entity that is liable with the debtor on, or has secured, the claim of a creditor, to the extent that—

(A) Such creditor's claim against the estate is disallowed—

mandating disallowance of claims for contribution to the extent that the creditors' claims against the estate are disallowed, does contain such a requirement indicates that Congress knew how to enact such a provision. Its failure to do so in § 502(e)(1)(B) indicates that the purpose of disallowing contingent indemnity and contribution claims is precisely because they are so contingent. Section 502(e)(2) supports that notion by enabling allowance of reimbursement and contribution claims seeking fixed amounts and are thus no longer contingent. By this, Congress apparently sought to achieve the administrative purpose of enabling distribution to unsecured creditors without a reserve for these types of contingent claims when the contingency may not occur until after the several years it often takes to litigate the underlying lawsuit.

Nor can the co-liability requirement be interpreted to limit the section only to instances where both the debtor and the claimant have been found liable in the underlying lawsuit. Indemnification, as opposed to the common law right of contribution, has no such requirement. *Rogers v. Dorchester Associates*, 32 N.Y.2d 553, 347 N.Y.S.2d 22, 31–32, 300 N.E.2d 403 (1973). More importantly, to interpret § 502(e)(1)(B) as requiring that a debtor be found liable in the underlying lawsuit would render it practically meaningless in light of § 362(a)'s automatic stay of actions to recover on pre-petition claims. Thus, the co-liability requirement is to be interpreted to require a finding that the causes of action in the underlying lawsuit assert claims upon which, if proven, the debtor could be liable but for the automatic stay. It is thus to examination of each of the various complaints that we now turn.

### III

■ Of the underlying complaints, the actions brought by Wedtech and the criminal actions are easily disposed of. Wed-

tech obviously cannot be co-liable with Mariotta and Chinn on the causes of action asserted in adversarial proceedings brought by it. Nor can Wedtech be a creditor of its own estate. Similarly, the criminal actions are not brought by the United States in its status as a creditor. Thus, those portions of the two proofs of claims seeking indemnification for these underlying actions are not within the compass of § 502(e)(1)(B) and a hearing must be held to determine whether or not the claimants acted in good faith, as the by-laws require, in order to determine whether or not to ultimately disallow those portions of their claims.

■ With respect to the other civil suits, examination of the various complaints reveals that most of the causes of action assert claims on which claimants and Wedtech are co-liable within the meaning of § 502(e)(1)(B).[6] The complaint in *In re Wedtech Securities Litigation*, No. 86 Civ. 8628 (LBS), alleges that Chinn and Mariotta were controlling persons under Section 15 of the Securities Act of 1933 ("the Securities Act"), 15 U.S.C. § 77o, and Section 20 of the Securities Exchange Act of 1934 ("the Exchange Act"), 15 U.S.C. § 78t, and were participants in concealing Wedtech's financial condition in order that they could retain their positions, cover-up past and current misconduct, and sell different issues of Wedtech securities at inflated prices in violation of Sections 11, and 12(2) of the Securities Act, 15 U.S.C. §§ 77k and 77l, and Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder. 17 C.F.R. § 240.10b–5. The complaint in that action also alleges that Chinn and Mariotta violated the Racketeer Influenced and Corrupt Organizations Act, ("RICO"), 18 U.S.C. § 1962(a)–(d) (1986), through Wedtech, an alleged rackateering enterprise, and further alleges that the defendants committed common law fraud and negligent misrepresentation.

---

**6.** It is not seriously disputed that the various plaintiffs to these underlying actions are creditors. The holders of Wedtech debentures and notes are obviously creditors. So are the purchasers of Wedtech securities since, as discussed below, they have claims against Wedtech as issuer and seller of those securities. That the claims of purchasers of Wedtech stock might be subordinated by virtue of 11 U.S.C. § 510(b) does not deprive them of creditor status.

Clearly, the defendants and Wedtech can be co-liable under sections 11 and 12(2) of the Securities Act and section 10(b) of the Exchange Act and Rule 10b–5. Section 11 expressly provides for liability of issuers of securities, such as Wedtech, and directors of issuers, such as Mariotta and Chinn, where a registration statement contains an untrue statement of material fact or material omission. *See, e.g., Straus v. Holiday Inns, Inc.,* 460 F.Supp. 729, 732 (S.D.N.Y. 1978). The liability of directors, under § 11(b)(3)(A), is circumscribed by a director's proof that "he had, after reasonable investigation, reasonable ground to believe and did believe" that the registration statement was true and did not omit a material fact. But that shelter does not preclude Wedtech from also being liable.

An issuer, as seller, can also be liable under § 12(2). *See, e.g., Junker v. Crory,* 650 F.2d 1349, 1361–62 (5th Cir.1981). Section 15 of the Securities Act extends that liability to controlling persons, as Mariotta and Chinn are alleged to be, unless they had no knowledge of or reasonable grounds to believe in the existence of the facts giving rise to the liability of the controlled person. That section has its anologue in section 20 of the Exchange Act. *Securities and Exchange Commission v. Management Dynamics, Inc.,* 515 F.2d 801, 812 (2d Cir.1975). Individuals can thus be co-liable with a seller or offeror of securities pursuant to § 10(b) and Rule 10(b)–5 by virtue of § 20 and as participants. Wedtech could, but for the automatic stay, also be liable in this circuit vicariously for the acts of its employees, *e.g., Marbury Management, Inc. v. Kohn,* 629 F.2d 705, 712–16 (2d Cir.), *cert. denied sub nom. Wood Walker & Co. v. Marbury Management, Inc.,* 449 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980), and directly for common law fraud and negligent misrepresentation since it was Wedtech's registration statements, prospectuses, and financial statements that were the basis for the underlying allegations. Thus, if Mariotta and Chinn are liable, they and the debtor could be co-liable under § 502(e)(1)(B).

■ Liability under RICO, however, does not extend directly to Wedtech, as an enterprise, pursuant to 18 U.S.C. § 1962(b) and (c). In this circuit, a "person" liable under RICO must be an entity distinct from the enterprise, *Bennett v. United States Trust Co. of New York,* 770 F.2d 308, 314–15 (2d Cir.1985), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986). *Compare Medallion TV Enterprises, Inc. v. SelectTV of California, Inc.,* 627 F.Supp. 1290, 1294–95 (C.D.Cal.1986) (collecting cases), *affirmed,* 833 F.2d 1360 (9th Cir. 1987) (separate person) *with United States v. Hartley,* 678 F.2d 961, 988 (11th Cir. 1982), *cert. denied,* 459 U.S. 1170, 1183, 103 S.Ct. 815, 834, 74 L.Ed.2d 1014, 1027 (1983). Some courts have held that a culpable enterprise may be held liable under § 1962(a), *see Schofield v. First Commodity Corp. of Boston,* 793 F.2d 28, 32 (1st Cir.1986), and Wedtech was not a mere victim of the alleged RICO activity since it appears to have benefitted directly from the alleged bribes and fraudulent statements issued by being rewarded with government contracts and by obtaining proceeds at least from the note and debenture offerings. In this district, however, it has been held that an enterprise cannot be liable even under that subsection. *Rush v. Oppenheimer & Co.,* 628 F.Supp. 1188, 1197 (S.D.N.Y.1985). The issue remains unsettled. But, until the Second Circuit rules to the contrary, we are to follow *Rush v. Oppenheimer.* Thus, the portion of the claims seeking indemnity for the RICO allegations may not be disallowed under § 502(e)(1)(B).

The individual complaints filed against Chinn and Mariotta also indicate that, for the most part, contingent co-liability exists between them and the debtor. In *United High Income Fund, Inc. v. Neuberger,* No. 87 Civ. 5839 (LBS), the plaintiffs, purchasers of 14% senior subordinated notes due August 15, 1996, sold in a public offering on August 22, 1986, sued Chinn as a director and as a controlling person under Section 15 of the Securities Act and Section 20 of the Exchange Act. It is alleged that Wedtech's registration statement and other statements represented that Wedtech's engineering and entrepreneurial skills ac-

counted for its past success and future prospects. Thus, it is asserted that the true financial condition of Wedtech was not fairly presented and that those statements were materially inaccurate since they failed to reflect that Wedtech was the victim of a scheme perpretrated on it by members of management, was insolvent, and that its government contracts were due to bribes paid to potential leaders, government officials, union leaders and others in violation of Sections 11, 12(2) and 17(a) of the Securities Act, § 10(b) and Rule 10b–5 of the Exchange Act, and common law fraud.

■ For the same reasons stated above, Wedtech and Chinn may be co-liable as to sections 11 and 12(2) of the Securities Act, section 10(b) and Rule 10b–5 of the Exchange Act and the common law fraud allegations. The same reasoning applies to § 17a of the Securities Act. 15 U.S.C. § 17q. "Persons" engaging in fraudulent securities transactions are subject to its terms and that term embraces corporations and entities. 15 U.S.C. § 77b(2). Although there is some question as to whether a private cause of action should be implied under § 17(a) of the Securities Act, the rule in the Second Circuit is that a private cause of action may lie under that section to purchasers of securities. *Kirshner v. United States*, 603 F.2d 234, 241 (2d Cir. 1978), *cert. denied*, 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979). *Compare Ray v. Karris*, 780 F.2d 636, 641, n. 3 (7th Cir.1985); *Teamsters Local 282 Pension Trust Fund v. Angelos*, 762 F.2d 522, 530 (7th Cir.1985) (not reaching the question of whether a private cause of action exists under § 17(a) but implying in dicta that the Seventh Circuit will follow *Kirshner*); *Levine v. Futransky*, 636 F.Supp. 899, 901 (N.D.Ill.1986) *with Landry v. All American Assurance Co.*, 688 F.2d 381, 387–91 (5th Cir.1982) (holding that no private cause of action may be implied). Although the Second Circuit has hinted that *Kirshner* may soon be overruled, *e.g., Manufacturers Hanover Trust Co. v. Drysdale Corp.*, 801 F.2d 13 (2d Cir.1986), it remains controlling. *In re Gas Reclamation, Inc. Securities Litigation*, 659 F.Supp. 493, 506–07 (S.D.N.Y.1987).

■ In *Aim Advisors, Inc. v. Bear Stearns & Co.*, 87 Civ. 5762 (LBS), plaintiffs, purchasers of $4,000,000 of 14% notes name Chinn as a controlling person of Wedtech under section 15 of the Securities Act and section 20 of the Exchange Act and allege that he is liable under section 11 of the 33 Act, section 10(b) and Rule 10b–5 of the 34 Act, and the anti-fraud provisions of the Texas Blue Sky statute. Texas Rev. Civ.Stat.Ann. art. 581–33 (Vernon Supp. 1986). Chinn is also alleged to be liable for common law fraud, negligence, aiding and abetting others in violating the above named provisions and as liable for aiding and abetting others in violating section 12(2) of the Securities Act and RICO based largely on the same grounds asserted in *United High Income Fund, Inc. v. Neuberger*. Since the Texas Blue Sky statute is substantially similar in effect to the federal securities laws and neither party alleges that co-liability of Wedtech and Chinn does not exist under this statute, it appears that co-liability exists as to all claims except the RICO claims.

In *Asher v. Mariotta*, 87 Civ. 3205 (LBS), plaintiffs, open market purchasers of Wedtech common stock in 1986, are suing Chinn and Mariotta as directors and officers of Wedtech under Sections 11, 12(2) and 17(a) of the 33 Act, Section 10(b) and Rule 10b–5 of the 34 Act, section 12 of the Illinois Securities Law of 1953, Ill.Rev. Stats., ch. 121–½, § 137.12, and Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stats. ch. 121–½, § 262. They also assert RICO, common law fraud and negligence claims. Neither Chinn nor Mariotta alleges that co-liability does not exist under the Illinois statutes. Thus it again appears that Wedtech is co-liable with the defendants on all claims except for the RICO claims.

■ In Count X of the *Asher* complaint, the defendants are also alleged to have breached a fiduciary duty to *Wedtech*. As to this allegation, the defendants would be liable to the debtor as opposed to being liable with the debtor under § 502(e)(1)(B). Thus, their claims in respect to that portion

of the lawsuit also cannot be disallowed pursuant to that provision.[7]

Settle order consistent with this decision. A hearing will be scheduled with respect to the remaining claims.

**7.** The movants also assert that Chinn's and Mariotta's claims for indemnification are prohibited under § 502(b)(1) of the Bankruptcy Code. 11 U.S.C. § 502(b)(1) (1986). That provision disallows a claim if it is unenforceable against the debtor under applicable nonbankruptcy law for a reason other than that such a claim is contingent or unmatured. In order to determine whether indemnification of a defendant in an action based on violation of the federal securities laws is prohibited under § 502(b)(1) it appears that a relevant factor would be "whether the defendant acted with actual knowledge of falsity or reckless disregard for the truth." *Arden Way Associates v. Boesky,* 664 F.Supp. 863, 865 (S.D.N.Y.1987), *quoting, Odette v. Shearson, Hammill & Co., Inc.,* 394 F.Supp. 946, 954 n. 9 (S.D.N.Y.1975). Thus, Chinn's and Mariotta's claims for reimbursement for defending suits based on federal securities statutes where the underlying element of scienter need be established may not be disallowed under § 502(b)(1) until that element has been established. Simply put, it appears that, by its terms, § 502(b)(1) does not render unenforceable claims that are either contingent or unmatured. *See In re Andrews,* 78 B.R. 420, 423–24 (Bankr.E.D.Penn. 1987). This discussion, however, is academic as to most of Chinn's and Mariotta's claims since they are disallowed pursuant to § 502(e)(1)(B). As to the RICO portions of their claims not deemed disallowed, movants have not briefed this Court as to whether they would be unenforceable against the debtor under nonbankruptcy law. Thus, this Court cannot make a determination with respect to these portions of the claims absent the benefit of substantive analysis from the interested parties.