**In re DREXEL BURNHAM LAMBERT GROUP INC., et al., Debtor.**

**Bankruptcy No. 90 B 10421.**

United States Bankruptcy Court, S.D. New York.

Dec. 18, 1992.

P. Gruenberger, Weil, Gotshal & Manges, New York City, for Drexel Burnham Lambert Group, Inc., et al. (Drexel).

E. Sherby, Fried, Frank, Harris, Schriver & Jacobson, New York City, for thirty seven claimants (the "Claimants").

G. Sanders, Dewey Ballantine, New York City, for First Boston Corp. (First Boston).

P. Armstrong, New York City, for Kidder, Peabody & Co. Inc. (Kidder).

D. Jaroslaw, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for Advest, Inc. (Advest), and Shearson Lehman Brothers (Shearson Lehman).

S. Santoro, Christy & Viener, New York City, for Prudential Securities Inc. (Prudential).

J. Benedict, Rogers & Wells, New York City, for Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch).

H. Goldstein, Fried, Frank, Harris, Shriver & Jacobson, New York City, for Howard, Weil, Labouisse, Friedrichs Inc. (Howard Weil).

L. Dummett, Cleary, Gottlieb, Steen & Hamilton, New York City, for L.F. Rothschild (Rothschild).

MEMORANDUM OF DECISION ON THE APPLICATION OF § 502(e)(1)(B) TO THE INDEMNIFICATION OF DEFENSE COSTS ASSOCIATED WITH UNRESOLVED UNDERLYING THIRD PARTY ACTIONS

FRANCIS G. CONRAD, Bankruptcy Judge.*

We are presented with two issues [1]. First, whether claims for indemnification of

---

* Sitting by Special Designation.

1. Our subject matter jurisdiction over this controversy arises under 28 U.S.C. § 1334(b) and

the Order, dated February 19, 1991 (Pollack, S.D.J.), which withdrew the reference to this Court under 28 U.S.C. § 157(d) and 11 U.S.C.

costs and expenses, including attorney fees, (Defense Costs) associated with the defense of unresolved underlying third-party actions in which the debtor and claimant are co-liable should be disallowed under 11 U.S.C. § 502(e)(1)(B). Second, whether the equities of the particular case before us constitute an exception to the general rule that contingent claims for indemnification on which the debtor and claimant are co-liable should be disallowed under § 502(e)(1)(B).

We hold that whether indemnification of Defense Costs associated with pending third-party actions should be disallowed depends upon the specific provisions of the parties' agreement. Further, we hold that the equities of the case before us do not constitute an exception to the general rule of disallowance of contingent claims under § 502(e)(1)(B).

## FACTS

The Claimants filed proofs of claims relating to seven public offerings in 1986 of taxable municipal bonds (the "Offerings"). In connection with these Offerings, Drexel acted as the senior managing underwriter. The Claimants were underwriters in at least one Offering. The Claimants maintain that Drexel and the Claimants were parties to certain Agreements Among Underwriters (AAU's) that set forth the terms of their agreement, including the allocation of any costs or expenses associated with the Offerings.

The Claimants are defendants in various civil actions arising from the Offerings. Drexel is not named as a defendant in those actions only because the automatic stay came into effect when Drexel filed its bankruptcy petition. The civil actions allege that Drexel marketed $1.55 billion of taxable municipal bonds as safe, AAA rated securities when the bonds were backed by the "junk bond" market. Executive Life Insurance Company (ELIC), one of Drexel's "junk bond" customers, was to

issue guaranteed investment contracts in which to invest the bond proceeds. It was anticipated that funds from these contracts would be disbursed for public purposes. The actions maintain that, although a portion of the proceeds of the Offerings was available for financing public purposes, it was known from the initial stages of the program that no loans would be made for public purposes and that bond proceeds would remain invested with ELIC. The plaintiffs in the civil actions allege that because of the excess junk bonds in ELIC's portfolio, the collapse of the junk bond market led to their losses. They seek a declaration that the bonds were void *ab initio*, and they seek damages of more than $1.55 billion.

The Claimants maintain that most of the allegations in the civil actions concern Drexel's willful misconduct and that the primary basis of liability alleged against the Claimants in the actions is on an agency theory based on Drexel's misconduct.

Drexel's portion of the underwritings in these Offerings ranged from 11.3% to 41%. The proportionate participation of the other underwriters average 2.76% to 4.46%.

The Claimants seek indemnification or reimbursement from Drexel because they allege that Drexel and the Claimants entered into AAU's under which each underwriter, including Drexel, is obligated to pay its proportionate share, based upon its participation in the Offerings, of Defense Costs of defending claims stemming from the Offerings. Drexel's bankruptcy has forced the Claimants to incur increased Defense Costs because of the *pro rata* reallocation to each Claimant of Drexel's proportion of each Offering. The Claimants want Drexel to indemnify them under each AAU for these increased Defense Costs. In addition, they maintain that under each AAU, Drexel is required to pay its proportionate share of any resultant judgment or settlement from those civil actions. Further, they argue that because of Drexel's bank-

§ 105(a), and simultaneously re-referred to us jurisdiction over all core and non-core related matters. This is a core matter under 28 U.S.C. §§ 157(b)(2)(A) and (B). This Memorandum of

Decision constitutes findings of fact and conclusions of law under F.R.Civ.P. 52, as made applicable by F.R.Bkrtcy.P. 7052.

ruptcy, the other underwriters face the possibility of having to pay in excess of $1.55 billion for the alleged willful misconduct of their alleged agent, Drexel. Thus, they maintain that the equities dictate that their claims not be disallowed, but rather, that Drexel be obligated to pay its proportionate share of any judgment issued in the underlying action.

First Boston, Kidder, Advest, Prudential, Merrill Lynch, and Rothschild, (collectively, with Claimants, "Co–Underwriters") were co-underwriters with Drexel in various other underwritings of bond and equity security issues. Drexel acted as a co-lead underwriter in some of these offerings; in others, it was a member of the underwriting syndicate.

Similarly to the Claimants, these other co-underwriters are incurring Defense Costs associated with actions brought against the underwriters stemming from these bond and equity security offerings.

These co-underwriters seek indemnification from Drexel, under their respective AAU's, for the increased Defense Costs they have incurred because of the reallocation to each underwriter of Drexel's proportion of Defense Costs.

## DISCUSSION

■ The application of Code 11 U.S.C. § 502(e)(1)(B) [2] to disallow a claim requires that three elements be established. First, the claim must be for reimbursement or contribution. Second, the party asserting the claim must be "liable with the debtor" on the claim. Third, the claim must be contingent at the time of its allowance or disallowance. *In re Drexel Burnham Lambert Group, Inc.*, 146 B.R. 98, 100–101 (Bkrtcy.S.D.N.Y.1992). citing, *In re Provincetown–Boston Airlines, Inc.*, 72 B.R. 307, 309 (Bkrtcy.M.D.Fla.1987).

## THE CLAIMANTS' INDEMNITY CLAIMS

In connection with the Claimants' request that Drexel pay its proportionate share of any future payment based on a judgment that may be made in the pending litigation with third parties, the first element for application of Code § 502(e)(1)(B) is met. The Claimants seek to be indemnified by Drexel for its share of any judgment issued in the underlying action and "the concept of reimbursement includes indemnity." *In re Wedtech Corp.*, 85 B.R. 285, 289 (Bkrtcy.S.D.N.Y.1988) (*Wedtech I*).

Claimants contend that the second element for application of § 502(e)(1)(B) is not met. Claimants maintain that § 502(e)(1)(B) is not applicable to their claims because the parties negotiated to reallocate the loss resulting from the Offerings and this bargained for reallocation, which was incorporated in their AAU, is irrespective of the parties' liability.

■ The fact that the AAU requires the reallocation of losses irrespective of each parties' individual liability, but rather based on their participation in the Offering, nevertheless requires that some liability be established against the parties. If no liability is established against the parties, the Claimants are not required to pay the plaintiffs in the underlying action and they have no claim against Drexel. "No payment can be made to a principal creditor by one secondarily liable until liability has been determined." *In re Pacor Inc.*, 110 B.R. 686, 689 (E.D.Pa.1990). Further, courts have always recognized the application of § 502(e)(1)(B) to contractual claims for reimbursement which remain contingent. This fact was acknowledged by the parties in *In re Baldwin–United Corp.*, 55 B.R.

**2.** 11 U.S.C. § 502(e)(1)(B) provides (in relevant part):

[T]he court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on, or has secured, the claim of a creditor, to the extent that—

. . . . .

(B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution.

885, 890 (Bkrtcy.S.D.Ohio 1985). Indeed, in that case, in an effort to avoid the application of the section to a contribution claim of a joint tortfeasor, the parties argued that the section should be limited to contractual claims. In rejecting the limitation, the court noted that the phrase " 'an entity that is liable with the debtor' is broad enough to encompass any type of liability shared with the debtor, whatever its basis." *Baldwin–United, supra*, 55 B.R. at 890.[3] Thus, the section applies to claims other than contractual claims, and clearly applies to contractual claims for indemnification.

In *Provincetown–Boston*, an underwriter who was the defendant in an action alleging securities violations and fraud, sought indemnification from the issuer of the stock according to the terms of their underwriting agreement. The issuer, a bankruptcy debtor, objected to the claim under § 502(e)(1)(B) asserting that it was a claim for reimbursement by a party liable with the debtor and was contingent. The underwriter countered that its claim did not fall within the purview of § 502(e)(1)(B) because its claim stemmed from an "independent contractual obligation of [the issuer to the underwriter] established by [their] Underwriting Agreement." *Provincetown, supra*, 72 B.R. at 309. The court was unpersuaded by this argument and found that whether the duty to indemnify stemmed from an underwriting agreement or common law principles was "immaterial" because, in either case, the debtor would be affected in the same manner. The court added that, if the underwriter and issuer were found liable in the underlying suit, the debtor's duty to indemnify the underwriter would come into effect independent of the underwriting agreement because of the joint and several liability established by federal statute in securities actions under 15 U.S.C. § 77k(f). Thus, on facts similar to the case before us, the court found the underwriter and issuer satisfied the co-liability element.

The court commented that although the underwriter's claim was "based upon the express language of the Underwriting Agreement, the Underwriting Agreement [was] a contract for indemnification and contribution with respect to any liability arising from the issuance of [the issuer's] securities." *Provincetown, supra*, 72 B.R. at 310. In the same manner, the AAU, in the case before us, provides for the underwriters to contribute their proportionate share of any resultant judgment in the underlying actions with respect to any liability stemming from the issuance of the bonds.

The proper standard for determining if the claimant is liable with the debtor is whether "the causes of action in the underlying lawsuit assert claims upon which, if proven, the debtor could be liable but for the automatic stay." *In re Wedtech Corp*, 87 B.R. 279, 284 (Bkrtcy. S.D.N.Y.1988) (*Wedtech II*), citing, *Wedtech I, supra*, 85 B.R. at 290. The indemnity claims stem from third-party claims against Drexel and the Claimants. Drexel would be a defendant in the actions commenced by the third parties but for the automatic stay. The actions are based on Drexel's co-liability with Claimants.

As noted in *Wedtech I*, part of the purpose of this section is administrative, to permit "distribution to unsecured creditors without a reserve for these types of contingent claims when the contingency may not occur until after the several years it often takes to litigate the underlying lawsuit." *Wedtech I, supra*, 85 BR at 290. Thus, co-liability, the second element for the application of § 502(e)(1)(B) is established.

The determination of whether the claim is contingent is made at the time of the allowance or disallowance of the claim, which courts have established is the date of the ruling. *Baldwin–United, supra*, 55 B.R. at 894–895. The contingency contemplated by § 502(e)(1)(B) relates to both payment and liability. *In re Pacor, supra*, 110 B.R. at 689. The *Provincetown* court not-

---

**3.** The *Baldwin–United* court made reference to the fact that the legislative history to § 502(e) applied contract phrases to some of the types of claims intended. *Baldwin–United, supra*, 55 B.R. at 889–890.

ed that "a contingent claim is by definition a claim which has not yet accrued and which is dependent upon some future event that may never happen." *Provincetown, supra*, 72 B.R. at 310. Similar to the facts of *Provincetown*, the future event yet to be established, in the case at bar, is a determination that Drexel and the Claimants' are liable in the civil actions. The Claimants' claim is contingent until their liability is established. *Id.*, and the co-debtor has paid the creditor. *Baldwin–United, supra*, 55 B.R. at 895. "One who is secondarily liable may only secure distribution rights by paying the amount owed the creditor." *Pacor, supra*, 110 B.R. at 690. The liability has not been determined in the underlying suit against the Claimants who are "liable with" Drexel, and payment has not been made to the plaintiff in the underlying action. Nor has there been any payment based on a settlement.[4] Thus, the claim is contingent. The three elements for the application of § 502(e)(1)(B) are satisfied inasmuch as this is a contingent claim for reimbursement on which the debtor and Claimants are co-liable.

█ The Claimants further argue that even if they are liable with Drexel on contingent liabilities, the circumstances of this case requires that the claims not be disallowed. The Claimants maintain that the principal allegations in the underlying actions are based on Drexel's misconduct, that Drexel was the designer of the bond transactions and its primary consideration was generating fees. Most of the liability is asserted against Drexel, while the main theory of recovery against the Claimants is their authorization of Drexel to act as their agent. The Claimants contend that their inclusion as defendants is a result of Drexel's insolvency and they now face potential liability of $1.55 billion while Drexel, whom they label the primary wrongdoer, escapes liability. Although the Claimants recognize that contingent claims for reimbursement by a Claimant who is liable with the debtor on the claim are disallowed, they urge the application of the rule in this case is inequitable.

The equities inherent in § 502(e)(1)(B), however, are meant to benefit the debtor's direct creditors, not secondarily liable creditors with contingent claims. The degree of culpability of the respective parties is not an issue in the disallowance of claims under § 502(e)(1)(B).

An important consideration is the need for finality in a bankruptcy proceeding. The bankruptcy estate must not be burdened "by estimated claims contingent in nature." *In re Charter Company*, 862 F.2d 1500, 1502 (11th Cir.1989). The goals of bankruptcy include the rehabilitation of the debtor by affording a fresh start while treating creditors fairly by "paying ascertainable claims as quickly as possible." *Id.* Policy considerations dictate that we reduce the required reserves that the debtor maintains while awaiting a resolution of contingencies. Moreover, we should provide for maximum initial and interim distributions to creditors with direct and ascertainable claims. The secondarily liable creditors should be given a lesser status.

"The purpose of disallowing contingent indemnity ... claims is precisely because they are so contingent." *Wedtech, supra*, 85 B.R. at 290. Indeed, the Claimants have moved to dismiss the underlying action and, if successful, the Claimants would have no liability to the underlying plaintiffs and thus, no claim against Drexel for reimbursement.

Further, we note the fact that Drexel has not escaped liability in the underlying action inasmuch as Drexel has paid with respect to those cases and others as part of the Securities Litigation Claims Settlement Agreement dated May 3, 1991. *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285 (2d Cir.1992) (affirming the District Court (MP) and the Bankruptcy Court (FGC), sitting jointly).

Accordingly, the Claimants' claim for indemnification of any future payment based

---

4. This is not meant to imply that a settlement payment would eliminate the contingency. *See, In re Drexel Burnham Lambert Group Inc.*, 146 B.R. 98 (Bkrtcy.S.D.N.Y.1992), merely that, inasmuch as there has been no settlement payment made, we do not address the issue.

on a judgment or settlement in a pending third-party action is disallowed.

## CO–UNDERWRITERS INDEMNIFICATION CLAIMS FOR DEFENSE COSTS

The Co–Underwriters argue that claims for indemnification of Defense Costs are not within the scope of § 502(e)(1)(B) because the claims are not liabilities for which the Underwriters are "liable with" Drexel and the claims are not contingent.

The Co–Underwriters contend that there is no co-liability because while the Co–Underwriters owe fees to the attorneys in the third party actions, Drexel has no liability to these attorneys. Inasmuch as these attorneys could not proceed against Drexel to collect these amounts, the Co–Underwriters urge that the co-liability factor is not implicated.

The Co–Underwriters maintain that the legislative history to § 502(e)(1)(B) evinces the purpose of § 502(e)(1)(B) is to prevent "competition between a creditor and his guarantor for the limited proceeds in the [debtor's] estate." *In re A & H Inc.*, 122 B.R. 84, 85 (Bkrtcy.W.D.Wis.1990), *citing*, H.R.Rep. No. 95–575, 95th Cong., 1st Sess. 354 (1977), *reprinted in*, 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6310. They argue that, because the attorneys are not creditors of Drexel, there is no threat of multiple liability and no need for the application of § 502(e)(1)(B).

This narrow interpretation of § 502(e)(1)(B) based on the legislative history was rejected in *Wedtech I, supra*, 85 B.R. at 289–290. Although the court noted that "a principal purpose of the entire subsection [§ 502(e)] is to prevent a double payment by the estate," § 502(e)(1)(B) was "not so limited." Rather, these contingent indemnification claims on which the parties are co-liable are disallowed because "they are so contingent." *Id.* "*Wedtech [I]* and a number of other courts have viewed § 502(e)(1)(B) as having purposes that reach beyond the risk to the debtor of double liability and are directed at the difficulty of administering and distributing the debtor's estate while ongoing contingent claims of the type covered by § 502(e)(1)(B) still exist." *Sorenson v. Drexel Burnham Lambert Group, Inc., (In re The Drexel Burnham Lambert Group, Inc.)*, 146 B.R. 92, 97 (S.D.N.Y.1992).

The Underwriters cite *A1 Tech Specialty Steel Corporation v. Allegheny International, Inc. (In re Allegheny International, Inc.)*, 126 B.R. 919 (W.D.Pa.1991), to support their position that they are asserting a direct claim against Drexel. In Allegheny, the claimant sought reimbursement, under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA),[5] from the previous owner of its steel plants for response costs to be incurred for the remediation of hazardous waste located at the plants. *Allegheny, supra*, 126 B.R. at 921. The statute assesses liability against both the current owner of the property and any previous owner who owned the property at the time that hazardous materials were deposited on the property. After noting that direct contingent claims are not excluded by § 502(e)(1)(B), *Id.*, at 922, the court found that the CERCLA statute not only authorized "a joint-tortfeasor type contribution action for response costs incurred by a government entity" but also "a direct action for recovery of response costs incurred by a non-government entity." *Id.* at 922–923. The court reasoned that 42 USC § 9607(a)(4)(B)'s provision for a "direct action", removed the claimant's claim from

---

**5.** 42 U.S.C. § 9601 *et seq.* (1988). The section of CERCLA relied on by the claimants in Allegheny was 42 U.S.C. § 9607(a).

42 U.S.C. § 9607(a) provides in relevant part: [T]he owner and operator of a … facility, [and] any person who at the time of disposal of any hazardous substance owned or operated any facility at which, such hazardous substances were disposed of … shall be liable for

(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan; [and]

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan[.]

the scope of § 502(e)(1)(B) because the claim did not involve liability owed to a third party, rather the debtor was directly liable to the claimant. *Id.* at 923.

In the case before us, no statute is implicated that would give the Underwriters a direct cause of action against Drexel. Thus, *Allegheny*, is inapposite.

Moreover, the *Allegheny* decision was recently criticized in *In re Cottonwood Canyon Land Co.*, 146 B.R. 992 (Bkrtcy. D.Colo.1992), as having been incorrectly decided. The *Cottonwood* court asserted that the claimant in *Allegheny* was clearly liable to the Environmental Protection Agency (EPA) with the debtor for remediation. The *Cottonwood* court insisted that this is demonstrated by the solution devised by the *Allegheny* court in response to the concern that the allowance of the claim might lead to multiple recoveries against the debtor. The debtor would be subject to multiple recovery if the claimant failed to take remedial action to remove the hazard after it had received a distribution from the debtor, leaving the debtor liable to a claim by the Government for remediation of the plants. *Cottonwood, supra,* 146 B.R. at 996. The *Allegheny* court's solution was to require that any distribution on the claim be placed in a trust and only released on remediation of the sites. *Allegheny, supra,* 126 B.R. at 924. The *Cottonwood* court asserted that the "use of the trust device established the clear character of the claim." *Cottonwood, supra,* 146 B.R. at 996. The claim was not a direct claim by the claimant. "Instead, the funds were to be placed in a trust so that they would be used to satisfy the obligation that both the debtor and the claimant had to the EPA for the remediation of the properties." *Id.* On facts similar to those involved in *Allegheny,* the *Cottonwood* court, under § 502(e)(1)(B), disallowed claims for future remediation costs.

As we previously noted, the co-liability factor is determined by reference to the underlying third party action. If there is co-liability in the underlying action, then any amounts sought by way of indemnification or reimbursement "on account" of this underlying suit are subject to § 502(e)(1)(B) objection. *Wedtech II, supra,* 87 B.R. at 287. The *Wedtech II* court found that, in connection with pending third-party actions, § 502(e)(1)(B) applied to claims for reimbursement of "monies to be expended by [the claimant] in its defense" of those underlying actions. *Id.* Similarly, contingent claims for reimbursement of attorney fees associated with underlying actions in which the claimant was co-liable with the debtor were disallowed in *Wedtech I,* supra, 85 B.R. at 288–290 and in *Sorenson v. Drexel, supra,* 146 B.R. at 97. "The interdependence between [the claimant's] defense costs and the underlying action for indemnification places all of [the claimant's] claims under the umbrella of § 502(e)(1)(B)." *Id.*

■ These Underwriter's Defense Costs arise as a result of the underlying litigations in which Drexel and the Claimants are co-liable. Section 502(e)(1)(B) applies to "whatever contingent claims a co-debtor has which entitle him to be made whole for monies he has expended *on account* of a debt for which he and the debtor are both liable." *Wedtech II, supra,* 87 B.R. at 287, (emphasis added). Thus, the Underwriters' claims for indemnification of Defense Costs are claims for reimbursement on which the claimant is "liable with the debtor."

The only factor that remains to be determined is whether the contingency has been eliminated. The Underwriters urge that the payments that have been made to the attorneys representing them in the third party actions eliminate that contingency insofar as payments have been made. Drexel contends that the contingency has not been eliminated because there must be a finding of good faith on the part of the Underwriters in the underlying suit before Drexel is required to reimburse them. Absent this determination, Drexel continues, the contingency is not removed and the parties claim is subject to disallowance under § 502(e)(1)(B).

The Underwriters counter that there is no requirement in their respective AAU's for a finding of good faith on the part of the Underwriters. Rather, they allege that

the terms of the agreements require that Drexel indemnify the Underwriters for any amounts expended in the defense of these third-party actions without regard to any finding of good faith. The Underwriters, therefore, maintain that when they paid the Defense Costs, this fixed the amounts due and eliminated any contingency. Further, that under § 502(e)(2), to the extent their claims have become fixed by payment, the claims should be allowed and treated in the same manner as pre-petition claims.

Drexel argues that where there are ongoing third-party actions, everything, including the Defense Costs, is contingent with respect to a potential judgment. The contingency continues until the underlying actions are concluded and the merits are determined. In support of this position, Drexel relies on *Wedtech I*, where former officers and directors of the corporation sought indemnification for their defense costs arising from pending litigation and the court found those claims remained contingent until a determination with respect to liability in the underlying suit. In *Wedtech I*, however, the claims for indemnification sought by the former officers and directors were rooted in *Wedtech's* bylaws which provided for indemnification of the officers and directors only if they had acted in good faith or were successful on the merits. The claim for indemnification remained contingent until the conclusion of the underlying lawsuit that would determine the officers or directors good faith or whether they were successful on the merits.

The Co–Underwriters maintain that under their respective AAU's, their claims are not dependent on the outcome of the underlying litigations. Rather, Drexel is obligated to indemnify them regardless of the outcome of the underlying actions. They allege that the AAU's provide that each underwriter would pay Defense Costs based on its percentage participation in the

particular bond issues irrespective of any underlying liability in the actions.

■ Although, ordinarily "the contingency relates to both payment and liability," *Pacor, supra,* 110 B.R. at 689, the parties may contract to guarantee payment without regard to liability. "Contractual liability simply nullifies the need for judicial determination of such liability." *Id.* Thus, if the AAU's provide that Drexel will pay its proportionate share of the Defense Costs irrespective of any liability, a determination of liability is not in issue. The only contingency with respect to Drexel's share of the Defense Costs, that have already been incurred, relates to their payment. A contingent claim becomes fixed and allowable to the extent that the co-debtor has paid the underlying claim. *In re Early & Daniel Industries, Inc.,* 104 B.R. 963, 966 (Bkrtcy.S.D.Ind.1989). Under § 502(e)(2) [6], a person secondarily liable with a debtor may fix the claim by payment to the principal creditor and the claim will be allowed and treated in the same manner as a pre-petition claim. *Pacor, supra,* 110 B.R. at 689.

■ We must look to the language of each AAU to determine whether Drexel agreed to pay a share of Defense Costs based only on its proportionate share of the Offering. Where Drexel entered into this guarantee, to the extent that the Co–Underwriters have paid Drexel's share of the Defense Costs that have already been incurred, they have established their right to payment. *Early & Daniel, supra,* 104 B.R. at 967. As of the date of the ruling on the objection, the date of this Memorandum of Decision, their claim is not contingent and will be allowed.

■ Prior to reviewing the language of the respective AAU's submitted by the Co-Underwriters, we address the Co–Underwriters request that this court not disallow the future Defense Costs, but rather, esti-

---

**6.** 11 U.S.C. § 502(e)(2) provides in relevant part: A claim for reimbursement or contribution of [an entity that is liable with the debtor on, or has secured, the claim of a creditor] that becomes fixed after the commencement of the case shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) of this section, the same as if such claim had become fixed before the date of the filing of the petition.

mate them under § 502(c).[7] We have already ruled that the Co–Underwriters claims for indemnification of the Defense Costs satisfy the requirement that the Co–Underwriters are "liable with" Drexel for the Defense Costs because they stem from underlying actions on which Drexel and the Co–Underwriters are co-liable. Thus, to the extent these Defense Costs are not determined and remain unpaid, they are contingent claims for indemnification of a party co-liable with the debtor and disallowed under § 502(e)(1)(B). Although § 502(c) provides for the estimation of contingent claims, the section only applies to direct contingent claims because § 502(e)(1)(B) expressly provides for disallowance of contingent claims of a party secondarily liable with the debtor "[n]otwithstanding subsections (a), (b), and (c) of this section." 11 U.S.C. § 502(e)(1)(B). Although a creditor's claim which is contingent may give a right to estimation, "a person secondarily liable to a creditor is not in the same position as the [direct] creditor." *Pacor, supra,* 110 B.R. at 690. Thus, the claim may be estimated only if it is not disallowed by § 502(e)(1)(B). The Co–Underwriters claims for future Defense Costs are disallowed, subject to their right to have the disallowed claim reconsidered, under Code § 502(j), "if the contingency is resolved", *Sorenson v. Drexel, supra,* 146 B.R. at 94, by future payments.

### THE AAU'S

Each party was directed to submit a copy of the AAU associated with the offering for which they seek reimbursement of Defense Costs which have already been incurred.

The First Boston AAU provides for each underwriter involved in the offering to pay its proportionate share, based on its partic-

ipation in the offering, "of any legal expenses reasonably incurred ... in connection with investigating or defending any [action stemming from the offering]." First Boston Adams County Colorado Bond AAU, ¶ 13, dated November 6, 1986.

The agreement to pay the costs of defending the action is not dependent on the outcome of the underlying action.

Paragraph 13 of The First Boston AAU further provides that "each non-defaulting Underwriter shall be obligated to pay its proportionate share of all defaulted payments, based upon such Underwriter's participation in the Bonds as related to the participations in the Bonds of all non-defaulting Underwriters."

Paragraph 11 of The First Boston AAU provides that "nothing [in the AAU] will relieve a defaulting Underwriter from liability for its default."

In the same way, the AAU's associated with the offerings underwritten by Merrill Lynch, Advest, and Shearson Lehman all provide for each underwriter to pay its proportionate share of any Defense Costs without regard to one underwriter's liability in relation to another's liability.[8] These indemnification sections of the AAU's also all provide for the reallocation to non-defaulting underwriters of the obligations of defaulting underwriters. The sections also provide that defaulting underwriters are not relieved from liability.

First Boston, Advest, Merrill Lynch, and Shearson Lehman all have a contractual basis for the payment of Defense Costs, irrespective of the parties' liability *vis a vis* each other.

Once we establish that an underwriter has this contractual right to indemnification from another underwriter without regard to its liability in the underlying litiga-

---

7. 11 U.S.C. § 502(c) provides in relevant part:
   There shall be estimated for purpose of allowance under this section—
   (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case[.]

8. Merrill Lynch, Master AAU regarding Finevest Securities litigation, Section 19.

Merrill Lynch, AAU with reference to The One Bancorp. Section 18.
Merrill Lynch, Master AAU with reference to Home Shopping Network litigation, Section 19.
Advest and Shearson Lehman, AAU with reference to Ames Department Stores, Section 18(b).

tion, to avoid the application of § 502(e)(1)(B), the party seeking indemnification from the debtor must prove the amount of Drexel's share of the Defense Costs that it has already paid.

The non-defaulting underwriters may not collect from Drexel any amounts that would be reallocated to Drexel under the AAU because of another underwriter's default. According to the AAU, a defaulting underwriter is not relieved from liability for its default. Thus, the non-defaulting underwriters have an action against any defaulting underwriter for its share of Defense Costs, and the amount Drexel owes for its share of these increased Defense Costs due to another underwriter's default remains contingent until any action against this other non-defaulting underwriter is resolved. The non-defaulting underwriters must pay the share of Defense costs that would be reallocated to Drexel because of another underwriter's default.

Thus, each underwriter must pay its share of Defense Costs and its share of the amount that would have been reallocated to Drexel because of another underwriter's default before any portion of the payments it makes for Defense Costs is attributable to being a payment of Drexel's share.

To the extent of any payments for Drexel's share, the contingency is eliminated and the claim is allowable.

First Boston, Shearson Lehman, Advest and Merrill Lynch all have a contractual basis for indemnification of the Defense Costs without regard to the outcome of the underlying litigation. To the extent they have paid Drexel's share, their claim is allowed.

Kidder seeks indemnification for Defense Costs associated with actions stemming from three offerings. For the first, no AAU was provided to the court and the claim is disallowed.

The AAU filed with the court in support of the First Executive offering has no provision related to indemnification of one underwriter by another. The only indemnification provided for in the AAU flows from the issuer, First Executive, to the underwriters or from the underwriters to the issuer. Thus, there is no contractual basis for indemnification among underwriters. The underwriters' claim for indemnification from Drexel must await adjudication of the underlying action before they may bring actions for contribution against Drexel. The claim remains contingent and is disallowed.

Kidder seeks indemnification for Defense Costs associated with actions stemming from the Wyoming Community Development offering. The AAU provided to the court, in support of this request, provides for indemnification from co-underwriters based on the underwriter's proportionate share of the offering, independent of the underlying action. To the extent of any payments made by the Co–Underwriters for Drexel's share of Defense Costs, the claim is allowed.

Rothschild did not submit a copy of its AAU or any documentation to support its claim. Rothschild's claim is disallowed.

The Claimants and Prudential[9] have not submitted executed copies of the AAU's upon which they base their claim for indemnification of Defense Costs. The Claimants contend that Drexel, who was lead underwriter, executed the AAU's on their behalf and should have a copy of the documents.

Claimant's submitted a standard form AAU that was used by Drexel during the relevant time period, and copies of telexes with respect to each offering sent by Drexel to Howard Weil, one of the Claimants. With respect to each offering, a telex was sent by Drexel to Howard Weil informing them that its participation in the offering was subject to the relevant AAU "whether or not [it had] executed and returned such agreement." Another telex was sent that indicates that Drexel will execute the relevant AAU on Howard Weil's behalf at a time certain unless it receives, "prior to that time[,] a telegram or telex revoking [Howard Weil's] power-of-attorney."

**9.** Prudential's interests are represented by the Claimants.

Drexel denies the standard AAU is the applicable AAU and claims it has not found the relevant AAU's in its records. Drexel did, however, find unexecuted copies of AAU's with respect to two offerings.

At a July 9, 1992 hearing before this court, with respect to a motion filed by the Claimants to compel production of documents by Drexel, counsel for the Claimants requested the opportunity to depose Drexel's custodian of records. The court left open the option for Claimants to take testimony in court if they were not satisfied with the results of the deposition. Another hearing is required to afford the Claimants the opportunity for further discovery to locate the relevant documents.

## CONCLUSION

The Claimants request for indemnification by Drexel of its proportionate share of any future payment, based on a judgment or settlement, that may be made in pending litigation is disallowed under § 502(e)(1)(B), as a contingent, indemnity claim on which the debtor and Claimants are co-liable. Further, the equities of the case before us do not constitute an exception to this rule of disallowance.

The First Boston, Merrill Lynch, Advest and Shearson Lehman AAU's submitted to the court all provide a contractual basis for indemnification of Defense Costs. To the extent of any payments made by the Co-Underwriter's for Drexel's share of Defense Costs, their claim is allowed.

Kidder has a contractual basis for indemnification of Defense Costs based on its Wyoming Community Development Offering AAU. To the extent of any payments made by the Co-Underwriters for Drexel's share of Defense Costs, their claim is allowed.

Kidder's claim for indemnification, based on the First Executive AAU, does not provide a contractual basis for indemnification among the underwriters. They must await adjudication of the underlying action before they may bring actions for contribution from Drexel. The claim is disallowed.

Rothschild and Kidder claims based on offerings where no AAU was submitted to the court are disallowed.

Claimants will be afforded an opportunity for further discovery to locate the relevant AAU's in relation to their claim for Defense Costs.

Counsel for Debtor to settle the order.